**Alvin BUBIS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 21356.

United States Court of Appeals
Ninth Circuit.

Oct. 20, 1967.

Murray Lertzman, Tankel, Toll, Lertzman & Leavitt, Beverly Hills, Cal., for appellant.

William M. Byrne, Jr., U. S. Atty., John Lally, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG, BROWNING and ELY, Circuit Judges.

JERTBERG, Circuit Judge:

Following trial to the court, appellant was convicted of violating 18 U.S.C. § 1084 [interstate transmission of wagering information], and was sentenced to one year's imprisonment, execution of sentence suspended, fined $2,000 and placed on probation for one year.

On this appeal the facts are set forth in a stipulated statement of facts approved and certified to by the district judge pursuant to and in conformity with the provisions of Rule 76, Federal Rules of Civil Procedure.

The agreed statement of facts is as follows:

For some time prior to November, 1966, a device had been in use in the Los Angeles area which emitted a signal which was designed to enable the user to circumvent the telephone company's automatic record-keeping equipment, thereby avoiding long distance charges. The method normally followed was to telephone by direct dialing an information operator in another city and to cause the device to emit an audible signal which gave control of the long distance trunk line to the user. The Pacific Telephone Company was investigating this situation by keeping a record of the number and duration of direct dialing telephone calls to information operators in various parts of the country. In November, 1965, it was noted that a large number of direct dialing telephone calls

were made from the telephone number subscribed to by appellant to information operators in various parts of the country. It was further noted that these calls were of an unusual duration, some as long as ten minutes. As a result of the foregoing information, commencing approximately December 20, 1965, the Pacific Telephone Company connected automatic monitoring equipment to appellant's telephone line which recorded all of appellant's outgoing and incoming telephone calls, except for such periods as the recording tape may have been expended. The equipment was maintained until approximately March 24, 1966, without the knowledge or consent of appellant or any of the persons with whom he spoke on the telephone.

On April 11, 1966, an agent of the telephone company advised the United States Attorney's office of the foregoing facts and stated that certain of the recorded conversations "sounded like gambling". Subsequently, tapes of the recorded conversations were produced pursuant to a Grand Jury subpoena duces tecum. The tapes revealed that gambling information was being conveyed over interstate telephone lines by the appellant for three consecutive days commencing December 20, 1965. No other gambling activity was noted up to March 24, 1966, at which time the recording equipment was removed from appellant's telephone lines.

An indictment was filed against the appellant on June 2, 1966, charging him

with a violation of 18 U.S.C. § 1084. On July 11, 1966, appellant filed a motion to suppress all of the evidence hereinbefore referred to on the ground that the same had been illegally obtained. A hearing was had on the motion and on July 21, 1966, the said motion was denied by the district court. On July 25, 1966, trial commenced before the district court sitting without a jury. During the trial appellant made timely objections to the introduction of all evidence obtained through the use of the monitoring equipment. On August 15, 1966, the Court entered judgment against appellant finding him guilty of the charges set forth in the indictment. It is conceded that all of the evidence at the trial arose from the use and admission into evidence of the contents of the taped telephone conversations for the three day period commencing December 20, 1965.

On this appeal, appellant specifies that the district court erred in denying appellant's motion to suppress evidence obtained through wire-tapping, in admitting the evidence thus obtained, and in finding the appellant guilty of the offense charged.

The parties to this appeal are in agreement that under the facts before us, the judgment appealed from must be affirmed unless the use of such evidence is prohibited by the provisions of 47 U.S.C. § 605;[1] otherwise, the judgment must be reversed. Willful and knowing viola-

---

1. 47 U.S.C. § 605 provides:
   "§ 605. Unauthorized publication or use of communications
   "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom

he is serving, or in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or

tion of Sec. 605 is penalized by fine and imprisonment.[2]

The problem presented requires us to analyze the pertinent provisions of Section 605. Section 605 addresses itself to two distinct classes of persons.

■ The first part of the section is directed to those employees of systems of communication who have to do with the sending, receiving, or forwarding of interstate or foreign communications by wire or radio, and provides that no such person shall divulge or publish the existence, contents, substance, purport, or effect of any such communication to anyone other than the addressee or his authorized representative, or to authorized fellow employees, or in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority.

Obviously, this part of the section was designed and intended to protect the integrity of communications systems and it has so been judicially declared.[3]

■ There is nothing in the stipulation or the record to suggest or indicate that the employee or agent of the telephone company who connected automatic monitoring equipment to appellant's telephone line which recorded all of appellant's outgoing and incoming telephone calls from December 20, 1965 to March 24, 1966, and who advised the government of the facts set forth in the stipulation and who responded to the Grand Jury subpoena, had anything to do with receiving, or assisting in receiving, or transmitting, or assisting in transmitting any interstate or foreign communication on behalf of his employer. In fact, the record discloses that the employee or agent was a special agent of the telephone company in charge "of investigation of the manufacture, use and sale in the Los Angeles area of an instrument and device known as a multi-frequency signal generator (hereinafter referred to as 'the device'), which is being manufactured, sold and used for the purpose of completion of telephone calls, especially long distance telephone calls, and which enables the Telephone Company's billing equipment to be by-passed, and therefore, to avoid payment for the service for said calls charged by the Telephone Company to its customers for using the Telephone Company's facilities." Hence, he was not, under the express language of the first part of the section, within the class of employees of the telephone company who were authorized to divulge or publish the existence, contents, etc., of a communication sent or received over the telephone company's system in response

meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: *Provided*, That this section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public, or relating to ships in distress."

2. 47 U.S.C. § 501 provides:
"§ 501. General penalty
"Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this chapter, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both; except that any person having been once convicted of an offense punishable under this section, who is subsequently convicted of violating any provision of this chapter punishable under this section, shall be punished by a fine of not more than $10,000 or by imprisonment for a term not exceeding two years, or both."

3. See Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937); Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957); Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957).

to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority.[4]

■ The second part of the section is directed to all persons, not of the class of persons included in the first part of the section, who are not authorized by the sender of the communication to intercept and divulge or publish such communication. In this respect the second part of the section states:

> "* * *; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."

It is patent that the second part of the section was designed and intended not only for the purpose of protecting the integrity of communications systems, but also for the protection of privacy to those who use the facilities in a proper and normal manner.

It is to be noted that the second part of the section, unlike the first part of the section, does not permit the divulgence or publication of the communication in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority. This distinction between the two parts of the section was recognized in Nardone v. United States, 302 U.S. 379, 381, 58 S.Ct. 275, 276 (1937), where the court stated:

> "Such an application of the section is supported by comparison of the clause concerning intercepted messages with that relating to those known to employes [sic] of the carrier. The former may not be divulged to any person, the

latter may be divulged in answer to a lawful subpoena."

Under the literal language of the second part of the section, the agent or employee of the telephone company who intercepted the communications and divulged the existence, purport, and tenor thereof to the United States Attorney was forbidden to do so, since, under the stipulation, the interception was "without the knowledge or consent of appellant or any of the persons with whom he spoke on the telephone."

In the instant case, preliminary investigation by the telephone company revealed that a large number of direct dialing calls were made from the telephone number subscribed to by appellant to information operators in various parts of the country, many of which calls were of unusually long duration. As a result of the preliminary investigation, the company connected automatic monitoring equipment to appellant's telephone line. This occurred on December 20, 1965. Within three days, or by December 23, it was clearly established that appellant had an attachment to his telephone instrument which enabled him to make long distance calls without a record of such calls being made by the telephone company; that he was illegally transmitting messages over long distance circuits of the telephone company; that he was defrauding the company of the charges to which the company was entitled, and depriving the government of the tax imposed on long distance calls, and was a trespasser on the communications system.

To apply the literal language of the second part of the section to the foregoing circumstances would, in our view, reach an absurd result, contrary to common sense and reasonable business prac-

---

4. As we have noted, the first clause of § 605 authorizes disclosure only "in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority," but in this case information regarding the existence and contents of the intercepted conversations was initially volunteered to the United States Attorney by an agent of the telephone company. We do not

reach the question of whether the initial voluntary disclosure was prohibited by the first clause of § 605, and, if so, whether disclosure before the grand jury and trial in response to the government subpoena was barred as the fruit of the initial voluntary disclosure. See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

tices, and would be disruptive of the integrity of communications systems. It would mean that communications systems are powerless to take reasonable measures to protect themselves and their properties against the improper and illegal use of their facilities.

We do not believe that in the enactment of Section 605, or in any of the provisions of Title 47, Congress intended to deprive communications systems of their fundamental right to take reasonable measures to protect themselves and their properties against the illegal acts of a trespasser.

In Rathbun v. United States, 355 U.S. 107, at page 109, 78 S.Ct. 161 at page 163 (1957), the Court stated that Section 605 "must be interpreted in the light of reason and common understanding to reach the results intended by the legislature."

█ When a subscriber of a telephone system uses the system's facilities in a manner which reasonably justifies the telephone company's belief that he is violating his subscription rights, then he must be deemed to have consented to the company's monitoring of his calls to an extent reasonably necessary for the company's investigation. See Brandon v. United States, 382 F.2d 607 (10th Cir. 1967 and cases therein cited.

█ The record discloses that the telephone company continued from December 23, 1965, until March 24, 1966, or for a period of three months, to monitor all calls made and received by appellant, and to tape record the conversations of all such calls. In our view the monitoring and tape recording for such length of time, after ample evidence had been secured of the illegal use by appellant of the company's facilities, was unreasonable and unnecessary. To sanction such practices on the part of the telephone company would tend to emasculate the protection of privacy Section 605 was intended to protect.

In these circumstances the district court erred in admitting into evidence the tape recordings which were produced in response to the subpoena duces tecum.[5]

While we realize that the result which we have reached means that the appellant will go unwhipped of justice, nevertheless, we reach the result on the ground that that fact is less important than that the telephone company should not resort to unreasonable and unnecessary practices which we deem contrary to the provisions of Section 605.

The judgment of conviction is reversed and the cause remanded to the district court with instructions to dismiss the indictment.

5. In holding that the tape recordings were inadmissible because *the interception* exceeded that necessary to enable the telephone company to determine whether appellant was a trespasser upon its property and, if so, to pursue its remedies against him, we do not mean to suggest that *the disclosure* which occurred would have been lawful if the interception had been properly limited.

The second clause of § 605 prohibits unauthorized divulgence as well as unauthorized interception. Disclosure as well as interception is limited by the consent reasonably implied; that is, consent to such invasion of the subscriber's privacy as is necessary to protect the tele-

phone company's property. In the present case, disclosure of what was *said* in appellant's telephone conversations (as distinguished from the fact that the long distance calls were made and not paid for) had no relationship to protecting the telephone company's property. It is equally difficult to find any implied consent by appellant to disclosure for the purpose of convicting him of using interstate telephone facilities for gambling. Disclosure for this purpose contributed nothing either to the collection of long distance tolls that appellant may have owed the company, or to preventing him or others from thereafter using long distance telephone facilities without paying.