No. 983. Hanna v. United States. C. A. 5th Cir. Certiorari denied. *Guy Johnson* for petitioner. *Solicitor General Griswold, Assistant Attorney General Wilson, Beatrice Rosenberg,* and *Sidney M. Glazer* for the United States.

Mr. Justice Fortas, with whom Mr. Justice Douglas joins, dissenting.

Petitioner asks that we review the decision of the Court of Appeals for the Fifth Circuit affirming his convictions for defrauding the telephone company in violation of 18 U. S. C. § 1343 and for use of interstate commerce facilities for illegal gambling in violation of 18 U. S. C.

§§ 1084 and 1952. The only evidence against petitioner was obtained by the telephone company's action in tapping his telephone line or was the product of information gained from that tap. The company became suspicious that petitioner was using a "blue box" to avoid payment for long-distance telephone calls. A "blue box" is an electronic signaling device which can be used to bypass the equipment which automatically records tolls on direct-dialed long-distance calls. An electronic device—which did not record the content of any conversations—confirmed the presence on the line of the 2,600-cycle tone characteristic of the operation of a "blue box." Company security officers then connected to petitioner's line a tape recorder which began recording the conversations on the line whenever the 2,600-cycle tone appeared and which automatically cut off after 35 to 45 seconds.

The recording instrument was used for about three weeks. The FBI was then informed of the recordings, and the recordings were turned over to a grand jury in response to a subpoena. Using the recorded information, the FBI obtained a warrant and conducted a search of petitioner's home.

Section 605 of the Federal Communications Act of 1934, 48 Stat. 1103, 47 U. S. C. § 605, prohibits the interception and divulgence of telephone messages.[1] It is argued—and the Fifth Circuit held—that the information was not unlawfully obtained because § 605 excludes from its prohibitions certain divulging of telephone messages by

---

[1] This tap was installed without a trespass, but if placed by law enforcement officers, it would clearly have violated the protections of the Fourth Amendment, as defined by this Court in *Katz* v. *United States,* 389 U. S. 347 (1967). The tap was, however, installed before the decision in *Katz* was announced. This Court has determined that it will not consider the constitutionality of non-trespassory invasions which took place prior to *Katz. Desist* v. *United States, ante,* p. 244; *Kaiser* v. *New York, ante,* p. 280. Accordingly, I consider only statutory questions here.

"[a] person . . . transmitting, or assisting in transmitting" conversations.

In a similar case, *Bubis* v. *United States,* 384 F. 2d 643 (C. A. 9th Cir. 1967), the Ninth Circuit held that under § 605 the telephone company was not allowed to continue tapping its subscribers' lines to detect fraud "after ample evidence had been secured of the illegal use . . . of the company's facilities." 384 F. 2d, at 648. The tap in *Bubis* recorded the whole conversation and not merely the first part, but an essential fact—that the interception was more extensive than necessary to detect fraud—is the same in both cases.

I would grant certiorari in this case to resolve the area of conflict between circuits and to determine whether § 605 permits the telephone company to intercept and divulge personal communications which are used in the expectation of freedom from "the uninvited ear." *Katz* v. *United States,* 389 U. S. 347, 352 (1967).[2]

---

[2] The Government argues that the applicability of § 605 to events such as this is now of only academic interest because of the recent enactment of § 802 of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 212, 18 U. S. C. § 2510 *et seq.* (1964 ed., Supp. IV). That argument is untenable. Section 2511 (2)(a) of 18 U. S. C. declares:

"It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

It is by no means clear that the new statute would authorize this kind of conduct if a similar case occurred today. Unless it did, § 605 would still apply and the same problems that exist in this case would arise again.