UNITED STATES of America, Plaintiff,

v.

James A. HARVEY, Defendant.

No. LR-74-CR-152.

United States District Court, E. D. Arkansas, W. D.

May 23, 1975.

W. H. Dillahunty, U. S. Atty., John F. Forster, Jr., Sam Perroni, Asst. U. S. Attys., Little Rock, Ark., for plaintiff.

R. David Lewis, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENLEY, Circuit Judge, Sitting by Designation.

The defendant, James A. Harvey, is charged with violating the Wire Fraud Statute, 18 U.S.C. § 1343, by use of a device known as a "blue box." Such a device permits a person to circumvent a telephone company's billing mechanisms and thus to make free long distance telephone calls.

This case is now before the Court on the defendant's motion to suppress all evidence gained by the government as a result of certain wiretaps placed

on the defendant's telephone by the Southwestern Bell Telephone Company during a "blue box" investigation. The issue presented is whether the telephone company violated the provisions of 47 U.S.C. § 605 and 18 U.S.C. § 2511(1) and (2), thereby prohibiting disclosure of the results of the wiretaps under 18 U.S.C. § 2515.[1] After consideration of the testimony and the briefs, the Court believes that the motion to suppress should be denied.

## I.

A "blue box" is a device which emits a 2600 cycle tone over a telephone line. This frequency activates the telephone company's long distance mechanisms while circumventing its billing system. The caller first makes a long distance call to a toll free number. After this call is completed, the caller emits a 2600 cycle tone over the line by use of the blue box. This tone clears the line and allows the caller to then place a free long distance call anywhere in the United States.

Southwestern Bell first suspected that the defendant was using a blue box when it received a computer printout showing that the defendant had made four lengthy long distance calls to toll free numbers in June, 1974. Arrangements were made to attach a dialed number recorder to the defendant's line. This device prints on a paper tape the time of every outgoing call, the number called, the use of a 2600 cycle tone, and the number called immediately after the 2600 cycle tone emission.

On August 1, 1974 the company attached a dialed number recorder to the defendant's line. The first indication of a 2600 cycle tone was received on August 2, but the device failed to print out the number called immediately after use of the 2600 cycle tone. Thus, the company was not in a position to prove that the defendant had completed an illegal interstate call. In an attempt to ascertain whether such a call was being completed, the company also attached a tape recorder to defendant's line on August 5, 1974. The contents of the first two minutes of each incoming and outgoing call were recorded. If no 2600 cycle tones were indicated by the dialed number recorder, then both the paper tape and the audio recording were destroyed.

Between August 3 and August 17, the dialed number recorder indicated that no blue box calls were made from the defendant's telephone. On August 18 the paper tape showed a 2600 cycle tone, but, as before, the number called immediately after the tone was not printed. The tape recording revealed only that the caller was one "Rollin."

1. 47 U.S.C.Cum.Supp. § 605 provides in pertinent part:
   "Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall *divulge* or *publish* the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . ." (Emphasis added.)
   18 U.S.C. § 2511(1) provides for criminal penalties for any person who *intercepts* or *discloses* wire communications. However, § 2511(2)(a)(i) permits the telephone company to intercept and disclose wire communications in order to protect its property.
   "It shall not be unlawful under this chapter for an . . . officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication . . . ."

18 U.S.C. § 2515 provides in pertinent part:
   "Whenever any wire or oral communication has been intercepted, no part of the *contents* of such communication and no evidence derived therefrom may be received in evidence in any trial . . . if the *disclosure* of that information would be in violation of this chapter." (Emphasis added.)

James Handloser, Southwestern Bell's chief security officer in Arkansas, testified that the tape recording also recorded the tones emitted from the defendant's telephone immediately after the 2600 cycle tone and that laboratory analysis of those tones would have revealed the number called. However, no such analysis was made.

The dialed number recorder indicated blue box calls on August 25 and September 4. As before, the completed long distance number failed to appear on the paper tape. The tape recorder showed that one call was made by "Rollin" while the other call went unrecorded because the tape had run out. On September 16 the dialed number recorder indicated a blue box call and by listening to the tape recorder the company ascertained that "Rollin" called one "Elaine" at extension 55 of a Memorex store. This call was traced to Los Angeles, California, and so on September 17 Southwestern Bell contacted the F.B.I. and turned over the results of its investigation. There is no evidence that the company and the F.B.I communicated about this matter prior to September 17, or that the F.B.I. even knew that an investigation of the defendant was being conducted.

The monitoring of defendant's telephone was terminated the following day, and on September 19, 1974 the F.B.I. executed a search warrant at the defendant's home. Instead of finding a traditional "blue box," however, the agents seized a "black box" and several cassette tapes which emitted 2600 cycle tones.[2]

Bell acted as *de facto* deputized agent of the F.B.I. in conducting the investigation of the defendant. For without official governmental action, the proscriptions of the Fourth Amendment are inapplicable. Coolidge v. New Hampshire, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Here, the defendant produced no hard evidence that federal agents instigated, directed, or acquiesced in the investigation of the defendant before September 17, 1974. Accordingly, the Court finds that the telephone company acted in a purely private capacity in conducting its investigation. United States v. Clegg, 509 F.2d 605, 609 (5th Cir. 1975).

■■ Even assuming that actions of Southwestern Bell could be attributed to the government, the Fourth Amendment would not prohibit the use of the paper tapes at trial. The Fourth Amendment protects only the content of a telephone conversation and not the fact that the call was made. United States v. Clegg, *supra*, at 610; United States v. Baxter, 492 F.2d 150, 167 (9th Cir. 1973). Telephone subscribers have no reasonable expectation that no printed records of their calls will be maintained. Since no reasonable expectation of privacy has been invaded by printing such information, no "search" takes place within the meaning of the Fourth Amendment when the telephone company attaches a dialed number recorder to a subscriber's line. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

## II.

■■ The defendant initially argues that use of both the dialed number recorder and the audio tape recorder constituted an unreasonable search in violation of the Fourth Amendment. This argument is based on the major unarticulated premise that Southwestern

## III.

The defendant next contends that evidence of his use of a blue box was obtained by Southwestern Bell in violation of 47 U.S.C. § 605 and that such evidence must be excluded. Section 605 expressly exempts from its reach any interception or disclosure permitted by 18 U.S.C. § 2511. Thus, the question

---

2. A "black box" permits incoming long distance calls to be made without charge.

of whether the defendant's calls were permissibly intercepted and disclosed is governed by § 2511.

Section 2511(2)(a) expressly permits the telephone company to intercept and disclose the contents of conversations if done for the purpose of protecting company property. This was the clear purpose of investigating the defendant's potential use of a blue box. However, the defendant asks the Court to read a standard of reasonableness into the section, *see* Bubis v. United States, 384 F.2d 643 (9th Cir. 1967), and to hold that Southwestern Bell far exceeded the bounds of reasonableness in recording the contents of the first two minutes of every incoming and outgoing call for a period of six weeks.

■■■■ In this criminal case, however, the only question before the Court is whether the tape recordings of the allegedly illegal blue box conversations are admissible under § 2515. Southwestern Bell and the government do not seek disclosure at trial of the contents of the legally placed calls made between August 5, 1974 and September 18, 1974. The legality of recording the contents of conversations in which a blue box was not used has no significance in assessing the admissibility of the allegedly illegal conversations where, as here, the recording of the illegal conversations is not the fruit of recording the legal ones. In passing on the admissibility of illegal conversations under § 2515, the Fifth Circuit has stated:

". . . [W]e do hold that § 2511(2) (a), at a minimum, authorizes a telephone company which has reasonable grounds to suspect that its billing procedures are being bypassed to monitor any phone from which it believes that illegal calls are being placed. If, by the use of a device similar to a TTS 176, it discovers the existence of illegal calls, § 2511(2)(a), again at a minimum, authorizes it to record, audibly, the salutations. Additionally, § 2511(2)(a) allows a telephone company to divulge, at least, the existence of the illegal calls and the fact that they were completed (the salutations) to law enforcement authorities and ultimately to the courts, since such disclosures are a necessary incident to the protection of the company's property rights." United States v. Clegg, *supra*, 509 F.2d at 612–13.

In the present case, Southwestern Bell clearly did not exceed this minimally permissible standard. Only portions of the contents of the first two minutes of the allegedly illegal calls were disclosed after the dialed number recorder indicated the use of a blue box. Recordings of all other calls were destroyed.

■■■■ Lastly, defendant argues that the recordings continued well past the point when the company had enough information to have the defendant indicted for wire fraud. Section 2511 by its terms contains no limitation as to time. Instead, defendant relies on the language in Bubis v. United States, *supra*, that:

". . . the monitoring and tape recording for . . . [a three month period], after ample evidence had been secured of the illegal use by appellant of the company's facilities, was unreasonable and unnecessary." *Id*. 384 F.2d at 648.

*Bubis* clearly is distinguishable from the present case. There, the company recorded every conversation in its entirety for three months whereas here only the first two minutes of each conversation were recorded over a six week period. Furthermore, there was no indication in *Bubis* that the telephone company experienced the technical difficulties encountered in this case.

Accordingly, it is the opinion of this Court that the motion to suppress will be, and hereby is, Denied.