**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Melvin L. FREEMAN, Defendant-Appellant.**

**No. 74–1696.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1974.

Decided Sept. 26, 1975.

Rehearing Denied Oct. 20, 1975.

Certiorari Denied Feb. 23, 1976.

See 96 S.Ct. 1126.

---

**3.** The record indicates that the witnesses were properly sworn.

**338**

Palmer K. Ward, Indianapolis, Ind., for defendant-appellant.

John E. Hirschman, U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SPRECHER and TONE, Circuit Judges.

FAIRCHILD, Chief Judge.

Appellant Melvin L. Freeman was indicted on four counts charging violations of the Wire Fraud Statute, 18 U.S.C. § 1343.[1] After a jury trial, he was found guilty on three of the four counts. On appeal he urges two grounds for reversal: first, that the indictment did not state an offense, and, second, that the district court erred in denying his pretrial motion to suppress certain evidence.[2] We reject both contentions and affirm his conviction.

---

1. The statute provides:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
   Added July 16, 1952, c. 879, § 18(a), 66 Stat. 722, and amended July 11, 1956, c. 561, 70 Stat. 523.

2. *United States v. Freeman*, 373 F.Supp. 50 (S.D.Ind.1974).

## I

In August, 1973 security officers at Indiana Bell Telephone Company suspected that Freeman was using a "blue-box," a device which permits the user to make long distance telephone calls not reflected in the telephone company's billing records. Such a fraud is perpetrated by applying the blue-box to a telephone line and dialing a toll free number on the telephone. When the receiving phone rings, the box is activated to emit a 2600 cycle tone. This tone disconnects the number dialed but allows the user to remain within the long distance toll network. The user then causes the box to generate a series of multi-frequency tones which correspond to the tones ordinarily generated by an operator placing a long distance call. Since the telephone company's billing system only registers the original toll free call, no one is ever billed for the long distance toll call made with the blue-box.

To verify their suspicions Indiana Bell's security officers applied a Hekimian Dialed Number Recorder (DNR), a device which records telephone traffic over a given line, to the telephone line of Linda K. Freeman on August 9, 1973. Initially, the DNR merely registered the outgoing calls made on this line on a paper tape. The DNR transcribed the time of a call, the date, and the number called.

On August 15, 1973 the DNR indicated that a blue-box was used. Subsequently, on August 23, 1973 Indiana Bell attached a magnetic aural tape recorder to the DNR hookup to determine if blue-box calls were completed and possibly who was making them. This tape recorder was activated only when the DNR detected a 2600 cycle tone indicating the use of a blue-box. Once activated the machine would record the following two minutes of traffic over the line. Since a 2600 cycle tone is never generated during ordinary telephone use, lawful conversations were never recorded.

Indiana Bell continued monitoring the Freeman line until September 4, 1973. On September 3rd and then twice on September 4th the DNR noted and recorded blue-box calls. Indiana Bell informed the FBI, and on the basis of the telephone company's monitoring information a search warrant was issued. When the warrant was executed a blue-box and sundry electronic paraphernalia were seized. This evidence together with the DNR paper and magnetic tape recordings formed the core of the case for conviction.

## II

■■■ The first proposition Freeman relies on for reversal is his contention that the indictment does not state an offense. He asserts that the Wire Fraud Statute was only intended to proscribe fraudulent schemes in which the party intended to be defrauded is the party receiving the communication, not the party transmitting the communication. Every court that has considered this argument has rejected it.[3] All the statute requires is that there be a scheme to defraud and an interstate telephone call made in furtherance of the scheme. *Brandon v. United States*, 382 F.2d 607, 610 (10th Cir. 1967); *Huff v. United States*, 301 F.2d 760, 765 (5th Cir. 1962), *cert. denied*, 371 U.S. 922, 83 S.Ct. 289, 9 L.Ed.2d 230. These elements having been alleged, we hold that the indictment stated an offense.

## III

Freeman's second argument has more substance. Relying on *United States v. Dote*, 371 F.2d 176 (7th Cir. 1966), he argues that the evidence seized pursuant to the search warrant should have been

---

**3.** *United States v. Douglas*, 510 F.2d 266, 267 (9th Cir. 1975); *United States v. Scaramuzzo*, 505 F.2d 102, 103 (9th Cir. 1974); *Scott v. United States*, 448 F.2d 581, 583 n. 5 (5th Cir. 1972), *cert. denied*, 405 U.S. 921, 92 S.Ct. 955, 30 L.Ed.2d 791; *Brandon v. United States*, 382 F.2d 607, 609–10 (10th Cir. 1967); *United States v. DeLeeuw*, 368 F.Supp. 426, 427 (E.D. Wis.1974); *United States v. Jaworski*, 343 F.Supp. 406, 407 (D.Minn.1972); *United States v. Beckley*, 259 F.Supp. 567, 569–71 (N.D.Ga. 1965).

suppressed because the information upon which the warrant was procured was secured in violation of 47 U.S.C. § 605.

In *Dote* we affirmed the suppression of evidence obtained through Illinois Bell Telephone Company's use, at the Internal Revenue Service's request, of a "pen register" to monitor telephone lines of suspected bookmakers. *Dote*, however, is not controlling. Not only was the surveillance there undertaken at the Government's behest, but since that decision Congress has amended section 605 in Title III, § 803 of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 223, mooting the case's continuing validity. See *Korman v. United States*, 486 F.2d 926, 931–32 (7th Cir. 1973); *United States v. Finn*, 502 F.2d 938, 941–42 (7th Cir. 1974).

■ The provisions of 47 U.S.C. § 605 governing the disclosure of communications by persons involved in their transmission are now prefaced by the caveat that the statute does not apply to the disclosure of communications authorized by chapter 119 of Title 18 U.S.C.[4] In chapter 119 of Title 18, only section 2517, which authorizes disclosures by law enforcement officers and in court testimo-

ny, is specifically designated as a section authorizing disclosure of intercepted communications. The government, however, contends that section 2511(2)(a)(i) authorizes telephone companies to engage in limited surveillance to protect their property and to disclose information so secured to law enforcement authorities. While section 2511(2)(a)(i) may more properly be characterized as an exemption from the criminal penalties of 18 U.S.C. § 2511(1) and the civil liabilities of 18 U.S.C. § 2520, in view of Congress' expressed intent to permit telephone companies to engage in reasonable activities to protect their property, we agree that section 2511(2)(a)(i) must sensibly be read as an exception of telephone companies from the relevant prohibitions of 47 U.S.C. § 605,[5] and, in a sense, as an authorization.

Section 2511(2)(a)(i) provides:

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his

---

**4.** As amended by the Crime Control Act, the pertinent language of section 605 reads:

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. . .

Chapter 119, Title 18, United States Code now governs the interception and divulgence of communications and, except as expressly authorized, prohibits the interception of oral or wire communications. 18 U.S.C. § 2510 *et seq*. Intercepted communications and evi-

dence derived therefrom are inadmissible in court if the disclosure of that information would violate this chapter. 18 U.S.C. § 2515. *Gelbard v. United States*, 408 U.S. 41, 46–52, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

**5.** The legislative history of the Crime Control Act indicates that Congress intended section 2511(2)(a) to reflect existing law which sanctioned the use of reasonable methods by telephone companies to protect their property. S.Rep.No.1097, 90th Cong., 2d Sess. (1968), 1968 U.S.Code Cong. & Admin.News, p. 2182, citing *United States v. Beckley*, 259 F.Supp. 567 (N.D.Ga.1965). The Senate report, furthermore, paraphrases the first sentence of revised 47 U.S.C. § 605 to read: "except as authorized or *permitted* by chapter 119, title 18 . . . ." *Id.* at 2197 (emphasis supplied). Since 18 U.S.C. § 2511(2)(a)(i) permits the disclosure of intercepted communications, it cannot be doubted that Congress intended the statute as an exception to the prohibitions of revised 47 U.S.C. § 605. But see *Hanna v. United States*, 394 U.S. 1015, 1017 n 2, 89 S.Ct. 1625, 23 L.Ed.2d 42 (1969) (Fortas, J., dissenting from denial of certiorari).

employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

■ The statute's use of the word necessary, its proviso restricting random monitoring and Congress' intent to maximize the protection of privacy, § 801(b), 82 Stat. 211, suggests that this authorization should be limited in scope. See *United States v. Shah,* 371 F.Supp. 1170, 1175–76 (W.D.Pa.1974); *Bubis v. United States,* 384 F.2d 643, 648 (9th Cir. 1967). If the interceptions and initial disclosure to the FBI fall within section 2511(2)(a)(i) it follows that the subsequent in court disclosures are lawful. 18 U.S.C. § 2517(3).

At the trial below the security manager for Indiana Bell testified that it was necessary to record the blue-box conversations on magnetic tape because the paper tapes only registered the length of time the telephone was off the hook and not whether the call was completed in violation of the subscription agreement.[6] This taping lasted for only two minutes following detection of a 2600 cycle tone and did not occur when the blue-box was not in use. Disclosure of Freeman's fraudulent activities to the authorities was of course justified. The conversation surveillance, therefore, was both necessary and in line with the minimal invasion of privacy contemplated by the statute. *United States v. Clegg,* 509 F.2d 605, 612–13 (5th Cir. 1975).

If Indiana Bell's conversation surveillance does not offend the wiretapping statutes, it would seem that a similar result should obtain as to the monitoring of telephone traffic on the DNR paper tapes. But chapter 119, Title 18 applies only to the "aural acquisition" of communications. 18 U.S.C. § 2510(4). *United States v. Finn,* 502 F.2d 938, 942 (7th Cir. 1974). As a part of that chapter Congress arguably intended the telephone companies' limited license to monitor conversations in section 2511(2)(a)(i) to be similarly confined. Thus the question remains whether by divulging the existence of conversations on the paper tapes, Indiana Bell violated 47 U.S.C. § 605[7] requiring suppression of the evidence.

An affirmative answer to this question would lead to an anomalous, if not absurd, result.[8] To arrive at such an answer we would have to conclude that the paper taping operation, a lesser intrusion of privacy, compels suppression while the conversation recording, a greater intrusion, does not. *Cf. United States v. Lanza,* 341 F.Supp. 405, 421–22 (M.D.Fla. 1972). Furthermore, to suppress the evidence on this basis would be contrary to Congress' expressed intention. In enacting the Crime Control Act, the legislation which substantially revised section 605, Congress made it very clear that the use of pen registers, devices which are similar to the DNR paper taping apparatus, was not prohibited. S.Rep.No. 1097, 90th Cong., 2d Sess. (1968), 1968 U.S.Code Cong. & Admin.News, p. 2178.

In view of our interpretation of the statutory provision, we do not reach the proposition that if the use of the communication facility itself is illegal, the right of privacy does not exist, and the matter may be divulged. See, *e. g. Hanna v. United States,* 404 F.2d 405, 407 (5th Cir.

---

**6.** Though not developed in the record, it seems clear that it is necessary to record at least a portion of the call in order to obtain the identity of the calling party.

**7.** See note 4, *supra,* for the relevant text of section 605.

**8.** In deciding this issue we do not mean to imply that all telephone company employees are "persons" within the ambit of the first sentence of section 605. There is no unanimity as to the correctness of this proposition, and rather than endorse it, we are assuming that the statute applies to any telephone company employee. *United States v. Finn,* 502 F.2d 938, 942 (7th Cir. 1974) and cases cited therein.

1968), *cert. denied,* 394 U.S. 1015, 89 S.Ct. 1625, 23 L.Ed.2d 42 (1969).

For the reasons set forth above, the judgment appealed from is affirmed.