**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond AULER, Defendant-Appellant.**

**No. 75–1055.**

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1975.

Decided Aug. 12, 1976.

Rehearing and Rehearing En Banc Denied Oct. 22, 1976.

James A. Walrath, Milwaukee, Wis., for defendant-appellant.

David C. Mebane, U. S. Atty., John R. Byrnes, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before CLARK, Associate Justice (Retired) *, FAIRCHILD, Chief Judge, and PELL, Circuit Judge.

FAIRCHILD, Chief Judge.

In this appeal we are once again asked to consider the scope of the authority of a common carrier to intercept and disclose wire communications, 18 U.S.C. § 2511(2)(a)(i),[1] in the context of the prohi-

---

* Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States is sitting by designation.

1. 18 U.S.C. § 2511(2)(a)(i) provides that:

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communi-

bition against the unauthorized publication or use of interstate wire communications, 47 U.S.C. § 605.[2] The appellant, Raymond Auler, was convicted for violating the Wire Fraud Statute, 18 U.S.C. § 1343,[3] and sentenced to six months imprisonment. He argues that several grounds support a reversal: (1) the disclosure of wire communications by General Telephone to the F.B.I. violated 47 U.S.C. § 605; (2) the security agents of General Telephone violated the requirements of the Fourth Amendment; (3) the surveillance conducted by the General Telephone violated the Wisconsin Electronic Surveillance Law; and (4) the indictment failed to state an offense under 18 U.S.C. § 1343. We are, however, unable to find that any of these contentions require a reversal, and therefore, we affirm the decision of the district court.

## I

During June, 1973 a security supervisor for the Wisconsin Telephone Company, Bernard G. Schlimgen, attached a 2600 cycle detecting device to the telephone line serving Auler's residence in Milwaukee. Schlimgen believed that there was in use a device known as a "blue box" to fraudulently place toll-free long distance calls. The blue box is used to electronically bypass the telephone company's billing equipment. After engaging a wide area telephone service system (WATS), the blue box emits a 2600 cycle tone which allows the user to remain within the toll system after the WATS line has been disconnected. Subsequently, the user "key pulses" through the blue box a series of multifrequency tones, comparable to those normally generated by a long distance call. The telephone company's billing equipment only records the original toll-free call; consequently, the user is not charged for the call made with the blue box.

The 2600 cycle detector indicated that an out of state call was made by use of the blue box technique. Schlimgen informed Roger Davis, then a Special Agent for the F.B.I., of this suspected violation of the Wire Fraud Statute. Davis obtained a warrant, and accompanied by Schlimgen, searched Auler's residence. They did not find a blue box, but learned from Auler's daughter that Auler had been present earlier, but was moving to Wisconsin Dells.

On June 21, 1973, Schlimgen contacted Gary Mattila, a security agent for the General Telephone Company, the company which provides telephone service for the Wisconsin Dells area, concerning Auler's alleged use of the blue box. Mattila discover-

cation, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks. *Id.*

**2.** 47 U.S.C. § 605 prohibits unauthorized publication or use of wire or radio communication:

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such

communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. . . . *Id.*

**3.** 18 U.S.C. § 1343 prohibits fraud through the use of interstate communication:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both. *Id.*

ed that Auler had two telephone listings at a Wisconsin Dells residence. He further learned from another Wisconsin Telephone Company security agent that Auler was a suspected blue box user. This information was obtained by examining a computer printout list of all the toll-free calls placed in that area. On the basis of these reports, Mattila ordered on July 13, and 17, 1973 the installation of a 2600 cycle detector placed on both of Auler's Wisconsin Dells telephone lines.

After the detection of numerous 2600 cycle tones, Mattila, on July 27, 1973, ordered the attachment of magnetic tape recording devices to Auler's lines to monitor all multifrequency tones and conversations originating from Auler's residence.[4] This taping was discontinued on one line on July 29, and on the other on July 30. General Telephone's logs indicate that the magnetic recorders also taped traffic over Auler's lines on August 2 through 3, and August 9 through 13.

On July 30 and 31, Mattila advised F.B.I. Agent Hunter that General Telephone had conducted an investigation regarding Raymond Auler, and that based on this investigation Auler was suspected of using a blue box. Hunter obtained a warrant on August 3 to search Auler's residence. Accompanied by Mattila, Hunter executed the warrant on August 10. Immediately preceding the search Mattila had been in contact with General Telephone agents who were monitoring Auler's lines. These agents informed Mattila that they had detected a 2600 cycle tone and had recorded Auler completing a call. During the search Hunter found and seized a blue box and other equipment. Auler was subsequently tried on stipulated facts and found guilty. Prior to trial Auler had unsuccessfully sought to suppress any evidence that was the product

of General Telephone's interception of his telephone lines.

## II

The appellant's primary argument asserts that the evidence secured to convict him was obtained in violation of the Communications Act of 1934, 47 U.S.C. § 605. Section 605 prohibits, with certain exceptions, the divulgence or publication of interstate communication received by wire by any person. Auler claims that the attachment of the 2600 cycle detector, the monitoring of his telephone lines by General Telephone Company, and the subsequent disclosure of the information secured through these devices to the F.B.I. were made in violation of section 605. Therefore, the information and the fruits thereof must be suppressed.

We were asked to address the same argument in *United States v. Freeman*, 524 F.2d 337 (7th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327, 44 U.S.L.W. 3472 (1976). In *Freeman* we considered the scope of the exception, provided in the first sentence of section 605,[5] as amended by the Crime Control Act of 1968,[6] in light of the prohibitions against disclosure of wire communications listed in the first paragraph of section 605. We held that section 2511(2)(a)(i)[7] "must sensibly be read as an exception of telephone companies from the relevant prohibitions of 47 U.S.C. § 605, and, in a sense, as an authorization." *Freeman, supra*, at 340. We find nothing in the appellant's argument or other recent cases, *e. g., United States v. Clegg*, 509 F.2d 605 (5th Cir. 1975) to suggest that our interpretation of these statutory provisions was incorrect. Therefore, we reaffirm our decision that section 2511(2)(a)(i) provides a telephone company with the power to protect its property through limited monitoring of the lines of suspected illegal users and the subsequent

4. The record is unclear as to whether incoming as well as outgoing calls were recorded. For the purposes of this opinion we will assume that only calls originating from the Auler numbers were recorded.

5. *Supra*, note 2.

6. Pub.L. 90–351, Title III, § 803, 82 Stat. 223.

7. *Supra*, note 1.

immunity[8] to disclose necessary information to law enforcement agencies.

 This authority of the telephone company to intercept and disclose wire communications is not unlimited. It may only intercept a communication which is "a necessary incident to the rendition of . . . service or . . . [for] the protection of the [company's] rights or property . . ." , 18 U.S.C. § 2511(2)(a)(i). In addition, section 2511(2)(a)(i) prohibits "random monitoring except for mechanical or service quality control checks." Therefore, we think that any surveillance of a suspected blue box user must be restricted to a determination of (1) whether a blue box is being used; (2) the multifrequency tones of the number "dialed" by the blue box; (3) whether the call was completed; (4) the duration of the call; and (5) the identity of the caller. This information can be obtained through a 2600 cycle detector,[9] or similar device, and a tape recording of the salutations at the beginning of the conversation. Therefore, section 2511(2)(a)(i) must reasonably be read to permit the telephone company "to divulge, at least, the existence of the illegal calls and the fact that they were completed (the salutations) to law enforcement authorities . . . ." *United States v. Clegg*, 509 F.2d 605, 612 (5th Cir. 1975). These authorized disclosures could properly be used to obtain a search warrant and would be admissible as evidence. 18 U.S.C. § 2517(3).

 Auler points out that General Telephone's surveillance of his conversations extended beyond the scope of permissible interception just outlined. At oral argument, the Government conceded that during the approximately two week period of surveillance, General Telephone monitored and committed to tape all calls, whether made illicitly with a blue box or in compliance with the subscription agreement. This intrusive interception provided General Telephone with far more information than it needed to protect its interests.

However, General Telephone only disclosed to the F.B.I. the limited evidence which section 2511(2)(a)(i) reasonably permits. See *Clegg, supra.* This consisted of edited tape recordings containing tones identified as those transmitted by a blue box, dialing signals, and salutations of the appellant. The interception of the material recorded on these tapes may be viewed apart from those more intrusive acts of surveillance which are not immunized by section 2511(2)(a)(i). The reasonable and necessary interceptions and disclosures need not be suppressed as the "fruits" of illegal surveillance. Neither the statute nor the Fourth Amendment, which does not prohibit unreasonable searches by private individuals, *Honeycutt v. Aetna Insurance Company*, 510 F.2d 340, 348 (7th Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975); *United States v. Newton*, 510 F.2d 1149, 1153 (7th Cir. 1975), require lawful interceptions and disclosures to be excluded as evidence; only evidence obtained through surveillance beyond the authorization of section 2511(2)(a)(i), which section 605 prohibits, must be suppressed. General Telephone provided no evidence stemming from excessive interception to the F.B.I., and the Government offered none at trial.[10] The edited tapes offered at trial were properly admitted. We do assume for the purpose of this discussion that

---

**8.** This is at least a partial immunity from the criminal penalties of 18 U.S.C. § 2511(1) and civil liabilities of 18 U.S.C. § 2520.

**9.** The use of a 2600 cycle detector, dialed number recorder, or pen register is not governed by the provisions of chapter 119 of Title 18. 18 U.S.C. § 2510(4). *United States v. Giordano*, 416 U.S. 505, 509, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (J. Powell, *concurring in part and dissenting in part*); *Korman v. United States*, 486 F.2d 926, 931–32 (7th Cir. 1973); *United States v. Fina*, 502 F.2d 938, 941–42 (7th Cir. 1974).

We have held, however, that such a limited intrusion by a telephone company, in light of the greater surveillance permitted under 18 U.S.C. § 2511(2)(a)(i), is surely permissible. *United States v. Freeman*, 524 F.2d 337, 341 (7th Cir. 1975).

**10.** Evidence which is obtained through an unreasonably broad surveillance cannot be legally disclosed to the government, regardless whether it is offered at trial. *Bubis v. United States*, 384 F.2d 643, 648, n. 5 (9th Cir. 1967).

General Telephone conducted excessive and therefore illegal surveillance. Any consequences to General Telephone in the context of the civil and criminal penalties imposed by chapter 119 of Title 18 would be the subject of an action to which General Telephone would be a party.

### III

The appellant further argues that even if section 2511(2)(a)(i) permits limited telephone company surveillance, he is entitled to the protection provided by the Fourth Amendment.[11] Auler asserts that the search warrant, executed by the F.B.I. was obtained as a result of illegal surveillance directed by Government agents. The tape recordings and the evidence secured as a result of the search of Auler's Wisconsin Dells residence should, he claims, therefore have been suppressed.

Auler relies on the principles that Government agents, state or federal, who engage in electronic eavesdropping must comply with the constitutional requirements of a reasonable search, *Katz v. United States*, 389 U.S. 347, 359, 88 S.Ct. 507, 19 L.Ed.2d 576 (1968); *Berger v. New York*, 388 U.S. 41, 58–60, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and that evidence, tangible or testimonial, which is seized without adherence to these constitutional safeguards must be excluded. *Weeks v. United States*, 232 U.S. 383, 391–92, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Before we can apply these principles to the case before us, the appellant must demonstrate that the Government was directly or indirectly engaged in gathering the alleged illegal surveillance.

The district court found that the F.B.I. neither initiated nor directed the surveillance conducted by General Telephone. Our own search of the record supports this conclusion. Nor do we find that the F.B.I. participated in or tacitly approved of the interceptions made by General Telephone to the degree that they became a "government search." *Lustig v. United States*, 338 U.S. 74, 78, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). *United States v. Mekjian*, 505 F.2d 1320, 1327 (5th Cir. 1975). Finally, we cannot agree with the circuitous reasoning that would label the surveillance permitted by section 2511(2)(a)(i) as governmental action, thereby requiring a warrant.

Auler further contends that the intimate collaboration between F.B.I. Agent Hunter and General Telephone employees Mattila and Nelson constituted a government wiretap, resulting in an illegally executed search warrant. The facts stipulated by both parties do indicate that on August 10, 1973 Nelson informed Mattila that the blue box was being used and that Auler had identified himself during the illegal call. Mattila received this information while he was in the company of Agent Hunter; both men were stationed outside Auler's residence. Upon receipt of this surveillance Hunter and Mattila executed the search warrant and found the blue box.

We are aware, as was the Government at oral argument, that Government agents must not rely on telephone company employees to act on their behalf without complying with the requirements of the Fourth Amendment. *United States v. Mekjian*, 505 F.2d 1320, 1327 (5th Cir. 1975); *Knoll Associates v. F. T. C.*, 397 F.2d 530, 534 (7th Cir. 1968). In no situation may the Government direct the telephone company to intercept wire communications in order to circumvent the warrant requirements of a reasonable search. The Government may not "use their ears for what [it] . . . cannot do." *United States v. Sugden*, 226 F.2d 281, 285 (9th Cir. 1955), *aff'd per curiam*, 351 U.S. 916, 76 S.Ct. 709, 100 L.Ed. 1449 (1956). On the morning of August 10, 1973 General Telephone was engaged in surveillance permitted by section 2511(2)(a)(i). The interceptions recorded by

---

11. Amendment IV. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon provable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Nelson were part of the continuing effort by General Telephone to gather evidence concerning Auler's illegal use of the telephone lines. The disclosure of this continuing illegal conduct was in furtherance of General Telephone's attempt to protect its equipment.

■ Based on information supplied by General Telephone, Agent Hunter had secured a valid search warrant. He had asked Mattila to accompany him to identify any illegal equipment found during the course of the search. Mattila's disclosure, just prior to execution of the warrant, that the blue box was being used, was a disclosure of information lawfully acquired through surveillance necessary to protect company rights and property. The surveillance had been conducted independently of any governmental direction. The search warrant had been obtained on the basis of legally intercepted and disclosed information. Consequently, the final disclosure by Mattila cannot transform authorized conduct into an illegal Government search. The trial record and the district court's analysis of these facts can bear no other interpretation.

### IV

■ The appellant also asks us to consider the effect, if any, of Wisconsin's Electronic Surveillance Control Law, §§ 968.27–968.33, Wis.Stat.1971, on his federal conviction. He argues that these statutes, which are almost identical to the federal Wire Interception Statutes, 18 U.S.C. § 2510 *et seq.*, transform General Telephone's conduct into "state action." This action, however, was brought by the federal government under federal law. General Telephone was conducting its surveillance as permitted by federal statutory authority. 18 U.S.C. § 2511(2)(a)(i). Therefore, we are unable to follow the argument that because the state statute also conferred authority, the authority conferred by federal law was limited by a warrant requirement.

Auler contends that the Wisconsin Supreme Court has ruled that the state statutory exception provided for telephone company surveillance and disclosure, § 968.-31(2)(a), does not constitute an "authorization," and the evidence obtained through this surveillance is therefore inadmissible in court. *State ex rel. Arnold v. County Court*, 51 Wis.2d 434, 442–43, 187 N.W.2d 354 (1971). We are not bound, however, by the state law. Based on our interpretation of section 2511(2)(a)(i) we conclude that the tape recordings and blue box equipment were properly admitted under federal law.

### V

■ Finally Auler contends that the indictment for wire fraud failed to state an offense. He argues that the Wire Fraud Statute, 18 U.S.C. § 1343, only proscribes conduct which defrauds a party receiving wire communication, not the party transmitting it. Our court along with every other tribunal which has considered this argument has rejected it. *United States v. Douglas*, 510 F.2d 266, 267 (9th Cir. 1975); *Scott v. United States*, 448 F.2d 581, 583, n. 5 (5th Cir. 1972), *cert. denied*, 405 U.S. 921, 92 S.Ct. 955, 30 L.Ed.2d 791 (1972); *United States v. Freeman*, 524 F.2d 337, 339 (7th Cir. 1975), *cert denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327, 44 U.S.L.W. 3472 (1976). "All the statute requires is that there be a scheme to defraud and an interstate telephone call made in furtherance of the scheme." *Freeman, supra*, at 339. These elements were properly alleged, and, therefore, the indictment states an offense.

For the reasons set forth above, the judgment appealed from is AFFIRMED.