JOHN E. DIERUF, PLAINTIFF AND APPELLANT, *v.* MYRLE A. GOLLAHER, DEFENDANT AND RESPONDENT.

No. 11778.
Submitted Jan. 14, 1971.
Decided Feb. 23, 1971.
481 P.2d 322

John Iwen (argued), Robert Tucker, Great Falls, for plaintiff-appellant.

Jardine, Stephenson, Blewett and Weaver, Leonard Morris Ormseth, Jr. (argued), Great Falls, for defendant-respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal is from the trial court's denial of plaintiff's motion for a new trial in an action in the district court of the eighth judicial district, wherein a jury verdict and resulting judgment was in favor of the defendant.

The fact situation is unique. The drivers of both vehicles involved in a head-on collision admitted having rather freely imbibed before the accident. The jury was given a full and descriptive account of each driver's activities during the hours just prior to the accident. On the evening before the accident plaintiff John E. Dieruf, with a girl he met at the Ulm Bar, began his evening activities. The girl testified that at the time she met plaintiff at about 7:30 p.m. "He seemed like he had been drinking some. He wasn't drunk * * *". The couple drove from Ulm to Great Falls and went to the J-T Bar, the Cowboy's Bar, the Westside Bar, the Caboose Bar and Dykeman's Bar in succession and consumed beer at each.

At the next bar, the Cimmaron, plaintiff changed his drinking pattern and began drinking a drink known as a "Sagebrush" the basic ingredient of which is whiskey. Upon leaving the Cimmaron Bar they proceeded to the Cartwheel Bar arriving there about midnight and plaintiff had at least one more Sagebrush. From there they went to the Nuggett Bar where plaintiff again had one or more drinks. His date testified that at about this time, approximately 1 a.m., he was "Acting pretty drunk then. One time he got up on a table and danced." They remained at the Nugget Bar until it closed at 2 a.m.; they then drove to Gibson Park and there plaintiff "went to sleep". His date testified he slept at least one hour and probably more because she was unable to awaken him, by shaking him. Just how long plaintiff slept is a question, but when he did awaken he went to his apartment to get some clothes, put gas in his car and began a trip to Bozeman, via Ulm where he intended to return his date to her home. A few miles southwest of Great Falls he was involved in the head-on collision.

Myrle A. Gollaher, the defendant, is a young cattleman living on his family's ranch east of Cascade. At the time of the accident he was 25 years of age and unmarried. On the day before the accident, a Friday, he had worked all day with cattle and in the evening drove some 25 miles into Great Falls to relax. Like the plaintiff, he went to the Cowboy's Bar, but consumed no drinks there. Later, after helping a friend pick up a truck, he and his friend went to the nearby J-T Bar where they met some girls. They spent the rest of the evening dancing and drinking. All told, defendant drank from 6 to 8 brandy cokes. When the bar closed at 2 a.m. the two couples went to defendant's ranch to have breakfast, a ranch breakfast of waffles, bacon, eggs and coffee. According to the testimony, after breakfast defendant took about a half-hour nap. It was when he was returning his guests to Great Falls that he met the plaintiff head-on.

The accident took place at approximately 5 a.m., May 25, 1968 about 3 miles south of Great Falls. Plaintiff was driving a 1964 Chevrolet Chevelle and traveling in a southwesterly direction toward Ulm. Defendant was driving a 1966 Dodge station wagon, traveling in a northeasterly direction toward Great Falls. Reconstruction of the accident, based on the participants' accounts of it, is difficult. Plaintiff remembers nothing of the accident, except headlights and glass. His date testified she was dozing and not very attentive. Too, she suffers from eye difficulties having only one-quarter vision in one eye and is often troubled with double vision, especially at night. She was supposed to wear glasses at all times but was not wearing them the night of the accident. She recalls seeing defendant's car coming at them, and that it "looked like" it was in their lane of travel.

Defendant testified that at the time of the accident it was real light but he still had his lights on, and that he believed the plaintiff's car also had its lights on when he saw it coming toward him. He further testified as follows:

"A. Well, when I first saw the car I never paid much attention to it. It was just an oncoming car. But I noticed it seemed to bounce and was coming over on my side of the road.

"Q. It was coming onto your side of the road? A. Yes.

"Q. And about how far away from you was it when you became aware it was coming on your side of the road? A. Approximately one hundred yards.

"Q. And what sort of angle was it coming at? Sharp one or gradual or what? A. Well, not just a gradual drift, not like it had been jerked, but fairly sharp. Just going right on off.

"Q. Did you get any impression as to the course that it was following? Where it was going to wind up? A. Yes. I thought it was going to go right on across the road into the ditch.

"Q: What did you do when you saw this car coming at you in your lane of travel? A. I swerved to the left.

"Q. And then what happened? A. I seen this car coming back.

"Q. What did you do then? A. About then is when I hit.

"Q. Did you turn back to your right, do you believe? A. I think I did. I couldn't honestly say. Things were happening so quick.

"Q. And did you attempt to put on your brakes? A. I believe I did.

"Q. When the cars hit, where did your car wind up? A. On the north side of the highway.

"Q. Were you able to tell anything yourself about which direction—were you steering the car as it went that way or pretty much out of your control? A. Pretty much out of my control. Just seemed like I froze, tried to turn but couldn't.

"Q. Do you have any idea, yourself, of the path that you followed from the place where the collision happened up until the point of the accident? A. Not until I was in the ditch. I remember it bounced when I hit the ditch.

"Q. All right. After the accident happened, were you able to get out of your door on your side? A. Yes. I got out my door.

"Q. It opened and you stepped out of it? A. Yes.

"Q. This may be a little bit out of order, but approximately where was the heavy damage on your car? A. Left front side.

"Q. Back how far? A. Just about to the door.

"Q. Was there any damage on the door itself? A. It tore the mirror off of it, outside mirror, and chrome strips and scratches."

There was one witness to the accident who had not been out on the town the evening before the accident. He was a truck driver from Minnesota who was driving toward Great Falls in a White Freightliner. His view of the road was some 10 feet above the road. The truck driver, Mr. Nordin, testified

he was driving between 65 and 70 miles per hour and was gaining on defendant's car when the accident occurred. He estimated that he was some four and a half tenths of a mile behind defendant's car when the accident took place; that just before the accident plaintiff's car moved to its left, crossed the center line and into defendant's lane of travel.

Plaintiff's contentions throughout the trial were:

That on May 25, 1968, approximately 3 miles southwest of Great Falls, Montana, on U. S. Highway 91, he was seriously injured as the result of a head-on collision with the defendant. That defendant was operating his vehicle while under the influence of intoxicating liquor and did not give plaintiff at least one-half of the main traveled portion of the highway in violation of section 32-2152, R.C.M.1947. That defendant wrongfully turned his automobile from the lane of traffic in which he was originally and normally traveling over and across the center line of the highway into the plaintiff's lane of travel. That defendant was further negligent in driving his vehicle to the left side of the highway in violation of section 32-2156(a) (1), R.C.M.1947; and, that defendant suddenly and without warning moved his vehicle from his lane of traffic into plaintiff's lane of traffic in violation of sections 32-2159(a), 32-2156(a) (1), 32-2152, 32-2151(b), R.C.M.1947.

Defendant generally denied plaintiff's contentions and alleged contributory negligence on the part of plaintiff.

Plaintiff presents seven issues on appeal:

1. The court erred in failing to grant plaintiff's motion for a directed verdict to find defendant negligent as a matter of law.

2. The court erred in failing to enter judgment for plaintiff on the element of liability.

3. The court erred in overruling the plaintiff's objections.

4. The court erred and it was prejudicial to the rights of the plaintiff for the court to give, over the objection of plaintiff, instructions No. 15 and 17.

446

5. The court erred and it was prejudicial to the rights of plaintiff to refuse to give plaintiff's proposed instruction No. 13.

6. That the verdict of the jury, and the judgment thereon, was not supported by substantial evidence, was contrary to the great weight of evidence, and was not in accordance with the law.

7. That the court erred and abused its discretion in denying plaintiff's motion for a new trial.

Because issues 1, 2, 6 and 7 are fact issues they will be considered together.

█ We have carefully reviewed the fact situation before the trial court at the time of plaintiff's motions. The trial court must view such motions in the light most favorable to the party against whom the motion is directed. Parini v. Lanch, 148 Mont. 188, 418 P.2d 861. Here the trial court found reasonable men might differ as to the facts and that a jury question was presented. Estate of Maricich, 145 Mont. 146, 400 P.2d 873; Garrison v. Trowbridge, 119 Mont. 505, 177 P.2d 464. The verdict supported the testimony of the truck driver who witnessed the accident from the rear of defendant's vehicle.

██ The four issues, revolving as they do around the fact issues, must as we have often said before, be viewed on appeal with the presumption that they are correct. This Court gives that presumption to the verdict of the jury and will change it only when it can be shown with reasonable conviction that the jury violated the law, gave way to passion, prejudice or partiality, made a mistake of law or fact, or acted carelessly or perversely. Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 414 P.2d 918; Bernhard v. Lincoln County, 150 Mont. 557, 437 P.2d 377. We find no error in the trial court's denial of plaintiff's motions.

Issue No. 3 challenges the rulings made by the trial judge

on several objections made by plaintiff's counsel. They are several in number and will be considered separately.

█ a. Plaintiff raises the propriety of the trial court allowing the testimony of two witnesses not previously listed as defendant's witnesses, over the timely objections of plaintiff.

The facts leading up to the additional witnesses were these: During the week before the trial defendant's counsel met with Highway Patrolman Brown and went to the scene of the accident with him. Patrolman Brown pointed out a gouge in the highway caused by the accident but he had no opinion as to what part of either car had caused the gouge. Three days before the trial defendant's counsel learned that plaintiff's counsel had located plaintiff's car and that Patrolman Brown had examined it and would testify that plaintiff's left front wheel had made the gouge mark at the instant impact between the two cars. With this apparent surprise change of the anticipated testimony of Patrolman Brown, defendant's counsel asked for a continuance, which was denied. Defendant's counsel then secured two witnesses to rebut this surprise testimony. Although plaintiff alleged prejudice, none was shown. We find no merit in this challenge.

█ b. Plaintiff next contends that the trial court's decision to allow the testimony of a Mr. Sanders was error. Sanders was the employer of Harvey Worrall, husband of Janet Worrall a member of the jury. We find no merit in this contention. Plaintiff's counsel made no objection nor motion for a mistrial directed to such employment relationship at the time it was made known to him and, in fact, he stipulated that an alternate juror could sit in her place. Such action on the part of plaintiff's counsel precludes plaintiff raising the issue here. Herren v. Hawks, 139 Mont. 440, 365 P.2d 641; Clark v. Worrall, 146 Mont. 374, 406 P.2d 822.

█ c. Plaintiff alleges that he was prejudiced when the trial court allowed Patrolman Brown to be examined on the speed of the vehicles involved.

The question directed to Patrolman Brown contained no reference to any particular speed but was rather phrased in terms of directional forces, i.e., to point out to the jury that the distance plaintiff's car traveled after the collision was directly related to the speed plaintiff's car was traveling prior to the collision. Plaintiff's objection that there was no testimony in the record as to speeds involved does not relate to the question at all. Certainly there was testimony that both cars were moving at the time of the collision, and the question asked by defendant's counsel simply tied in the relationship between the direction plaintiff's car was traveling prior to the collision with the skid marks left by plaintiff's car and its final position following the accident. We find no merit to this contention.

d. Plaintiff's last challenge is to the allowance by the trial court of introduction into evidence certain photographs of plaintiff's car. We have held in numerous cases that the trial court has wide discretion in admitting photographs and we find no error here. These photographs merely showed that the cars collided at an angle and were relevant in the reconstruction of the accident. Hackley v. Waldorf-Hoerner Paper Co., 149 Mont. 286, 425 P.2d 712; Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4.

In issue No. 4 plaintiff claims error to the giving of court's instructions 15 and 17 over his objections. In view of our ruling herein the instructions will not be set forth in detail. Plaintiff's objections are without merit for they were not properly or timely raised at the trial. The Montana Rules of Civil Procedure have been in effect since January 1, 1962, yet this Court is still asked to consider objections not properly made. Rule 51, M.R.Civ.P. provides in part:

"* * * Objections made shall specify and state the particular grounds on which the instruction is objected to and it shall not be sufficient in stating the ground of such objection to state generally the instruction does not state the law or is

against the law, but such ground of objection *shall specify particularly* wherein the instruction is insufficient *or does not state the law,* or what particular clause therein is objected to." (Emphasis supplied).

See also Salvail v. Great Northern Railway Company, Mont., 473 P.2d 549, 27 St.Rep. 614; Vogel v. Fetter Livestock Co., 144 Mont. 127, 394 P.2d 766.

■ Issue No. 5 relates to the trial court's refusal to give plaintiff's offered instruction No. 13. Instruction No. 13 as proposed read:

"You are instructed that if in this case you find a discrepancy between the physical facts proven by a preponderance of the evidence and the oral testimony given by a witness on the same matter to which the physical facts relate, then it is your duty to disregard the oral testimony and base your verdict upon the matters proved by physical facts."

Plaintiff relies on Hayward v. Richardson Const. Co., 136 Mont. 241, 347 P.2d 475, 77 A.L.R.2d 1144, as authority.

Defendant, too, relies on *Hayward* noting as that case did that "It is only when the physical facts are undisputed that they control over testimony within the rule of the case of Morton v. Mooney, 97 Mont. 1, 33 P.2d 262; Casey v. Northern Pac. R. Co., 60 Mont. 56, 198 P. 141, and kindred cases." Here the physical facts were in dispute.

In *Hayward,* as in this case, there was substantial evidence concerning the physical facts that supported the verdict of the jury, therefore no error is shown.

The decision of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, DALY and CASTLES, concur.