No. 12411

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

WILLIAM P. LAVELLE,

Plaintiff and Appellant,

-vs-

THOMAS F. KENNEALLY et al.,

Defendant and Respondent.

Appeal from: District Court of the Second Judicial District,
Honorable John B. McClernan, Judge presiding.

Counsel of Record:

For Appellant:

Neil J. Lynch argued, Butte, Montana

For Respondent:

Holland and Haxby, Butte, Montana
Robert J. Holland argued, Butte, Montana

Submitted: November 15, 1974

Decided: DEC 18 1974

Filed: DEC 18 1974

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

In this cause William P. LaVelle sued Thomas F. Kenneally, d/b/a Intermountain Trucking Co., to recover damages for an alleged breach of contract to haul petroleum products under tariff regulations formulated by the Montana Railroad Commission (MRC). This contract was effective from its inception in February 1965 to its termination in June 1970, and consisted of a series of leases providing that LaVelle would rent Kenneally's trucks and make deliveries of gasoline to the latter's service stations. At what rate the parties were to be paid is the nub of this controversy. The leases themselves provided as follows:

> 1. Lease of February 1, 1965: " * * * Lessor to receive Eighty Per Cent (80%) of the haulage fee as set by the MRC; Lessee to receive Twenty Per Cent (20%) of the haulage fee as set by the MRC. * * *"

> 2. Lease of October 1, 1965: " * * * 5. RENTAL: LESSOR is to receive Eighty Per Cent (80%) of the haulage fee as set by the MRC; LESSEE is to receive Twenty Per Cent (20%) of the haulage fee as set by the MRC. * * *"

> 3. Lease of June 3, 1968: " * **5.RENTAL: LESSOR is to receive Eighty Per Cent (80%) of the haulage fee as set by the MRC. Intermountain Truck Tariff #1. LESSEE is to receive Twenty Per Cent (20%) of the haulage fee as set by the MRC. tariff #1. * * *"

Kenneally contends the words "as set by the MRC" meant Intermountain Truck Tariff #1, while LaVelle insists they referred to Montana Motor Tariff #1 (effective prior to February 27, 1968) and Montana Motor Tariff #1A (effective after February 27, 1968). By coincidence, Intermountain Truck Tariff #1 and Montana Motor Tariff #1 were virtually identical as to the basis rate. Montana Motor Tariff #1A, however, represented an increase over the others; consequently, LaVelle claims he was underpaid for the hauls he made for Kenneally subsequent to February 27, 1968.

- 2 -

LaVelle introduced in evidence a purported summary of all the hauls he made for Kenneally during the life of their contract and called six witnesses, including himself, to testify. At the close of LaVelle's case, the district court granted Kenneally's motion for a directed verdict under Rule 50(a), M.R. Civ.P., on the grounds the evidence was insufficient to go to the jury. From this action, LaVelle appeals.

In reviewing a directed verdict, the issue is whether there are only questions of law. We must turn to the record for the answer and keep in mind that the law does not favor directed verdicts and all evidence should be viewed in the light most favorable to the appealing party. In re Estate of Hall v. Milkovich, 158 Mont. 438, 446, 447, 492 P.2d 1388, citing the leading case, Johnson v. Chicago, M. & St. P. R. Co., 71 Mont. 390, 230 P.2d 52. After thoroughly examining and re-examining this record, we find a failure of proof with respect to every element of LaVelle's case.

The tariff rate. Much ado was made on this point during trial and the above quoted provisions of the first two leases are ambiguous. The evidence as a whole is susceptible to only one reasonable interpretation: the tariff rate intended by the parties was Intermountain Truck Tariff #1. For instance, the lease of June 3, 1968 specifically referred to the Intermountain tariff. If the tariff provision had theretofore been ambiguous certainly it was clarified then. After relating the circumstances of the execution of this lease, Kenneally was asked about the possible differences between it and the leases of February 1 and October 1, 1965:

> "Q. Is that the only difference in that lease?
> The fact that there was a new piece of equip-
> ment? A. The other two leases had this. It
> had a reference to the Montana Railroad Com-
> mission and this lease was between Intermountain

Trucking Company and Intermountain Trucking
Company Motor Tariff. That's separate. So I
just further spelled out in this and inserted
the word Intermountain Motor Tariff but it,
in my mind, did not change anything because we
had been working under the Intermountain Motor
Tariff. We put that in there again to further
amplify--when Sheila LaVelle we asked her to
read this and to my knowledge she did read it.
This was in witness of our bookkeeper there at
the time.

" * * *

"Q. There was a difference between the first
two and the third leases? A. No."

This explanation was never refuted by LaVelle; indeed, the whole

subject of the lease of June 3, 1968 is conspicuous by its ab-

sence from his case, except as will hereinafter appear.

Further, LaVelle's general course of conduct throughout

this matter defies his assertion that a tariff other than the

Intermountain tariff was the operative one. On November 26, 1969,

he wrote a letter to Kenneally wherein he stated it was his feel-

ing that their contract should reflect the increases provided by

Montana Motor Tariff #1A. Yet, the lease in effect at that very

moment was the one of June 3, 1968, which specifically referred

to Intermountain Truck Tariff #1. Surely LaVelle was not ignorant

of this!

The manner in which this suit was instituted also makes

one skeptical of LaVelle's claims: A complaint, with all three

leases attached as exhibits, was filed alleging that the lease

of June 3, 1968 had been breached. Before Kenneally answered,

LaVelle filed an amended complaint alleging breach of the leases

back to February 1, 1965. Interestingly enough, the third lease

was not attached as an exhibit to the amended complaint, nor was

it later put in evidence. On its face, this portion of the record

indicates LaVelle knew which tariff rate prevailed. Moreover,

the allegation that a breach occurred as early as 1965 simply fails

to square with LaVelle's letter of November 26, 1969, and his

testimony that the underpayments did not begin until 1967 or 1968.

The witnesses. Numerous topics were discussed during four days of testimony, but the only relevant one--a breach of contract by Kenneally--was either avoided altogether or the proof was insufficient.

The summary. This exhibit consisted of 123 pages of names, dates and figures which purported to show all information about every haul LaVelle made for Kenneally under the contract. The conclusion LaVelle wanted the jury to draw was that Kenneally, by not using the Montana Motor Tariffs, had over the years underpaid him by some $27,000. We have already voiced our opinion on which tariff applied, but even if LaVelle was correct on that issue, we still agree with the district court that, as a matter of law, the exhibit was insufficient for a jury. Upon voir dire examination prior to introduction of this exhibit, LaVelle himself admitted it contained an undetermined number of inaccuracies and his wife--who did most of the calculations--would have to verify it. But Mrs. LaVelle never was called to testify. The exhibit, then, amounted to nothing more than plaintiff's summary of the monies allegedly owed him by defendant. Being unsupported by other evidence or testimony, it must fail for lack of proof. Thus this evidence was so insufficient in fact as to be insufficient in law. Parini v. Lanch, 148 Mont. 188, 418 P.2d 861.

It should be noted that LaVelle attributes a small part of his alleged damages to Kenneally's failure to pay him an additional $3 a piece for "split loads" (loads divided among service stations in the same town). Apparently this claim would be made even if the parties agreed on the tariff. The only evidence of underpayment for split loads is found in the 123 page summary,

which carries no weight. Moreover, both parties testified that throughout the course of the contract monthly adjustments in their accounts were made. The only reasonable conclusion to be drawn is that these adjustments reflected the extra payments due for split loads.

It is clear the district court acted properly in granting Kenneally a directed verdict, and its judgment is affirmed.

_____
                          Chief Justice

We concur:

_Wesley Castles_____

_John Conway Harrison_____

_Gene B. Daly_____

_Frank I. Haswell_____
Justices