No. 14898

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

VICTOR SISTOK,

Plaintiff and Appellant,

vs.

NORTHWESTERN TELEPHONE SYSTEMS, INC.,

Defendant and Respondent.

---

Appeal from:   District Court of the Eleventh Judicial District,
               Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Hash, Jellison, O'Brien and Bartlett, Kalispell, Montana
        James Bartlett argued, Kalispell, Montana

    For Respondent:

        Murphy, Robinson, Heckathorn & Phillips, Kalispell,
         Montana
        George Best argued, Kalispell, Montana

---

                        Submitted:  April 15, 1980

                          Decided:  July 22, 1980

Filed:   **JUL 23 1980**


*Thomas J. Kearney*
_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal results from a directed verdict in an action for invasion of privacy brought in the District Court of the Eleventh Judicial District, in and for the County of Flathead.

Respondent is a telephone company or common communications carrier serving subscribers in Flathead County. Prior to July 1975, respondent received several complaints from its subscribers regarding problems on one of its party lines. The problems complained of consisted partly of mechanical problems and partly of personal abuses. The mechanical problems were primarily crackling background noises on the party line. The personal abuses were: (1) listening in on conversations; (2) leaving the phone off the hook for extended periods of time with a radio playing in the background; (3) crass and harassing comments made during conversations; and (4) obscene telephone calls. Complaints were received by respondent throughout 1975. At trial respondent introduced evidence of five written complaints it had received, and respondent's personnel testified that other oral complaints were taken. Several of the subscribers to the party line testified that the problems with the line were continuous, but the exact dates of the abuses could not be recalled. The party line provided telephone service to eight subscribers, one of whom was appellant, Victor Sistock.

Respondent reacted to the complaints by sending letters to each of the subscribers on the party line. Two kinds of letters were sent. The first type urged the subscribers to follow several rules of etiquette in using the party line. Subscribers were told, for example, not to listen to other parties' conversations or pick the phone up during the con-

versations. Respondent maintains that this letter was sent almost monthly after it had received the first complaints in July. The second type of letter sent informed the subscribers that further complaints had been received and that the line would be monitored by respondent if abusive practices did not cease immediately. Without being sure as to the exact date, respondent maintains that this letter was sent only once, though several of the subscribers could not remember receiving any letters.

On April 16, 1976, approximately ten months after the first complaints had been received, respondent attached a recording device to the party line. During its period of operation, the recorder emitted a "beep" tone at time intervals, although several of the subscribers could not remember hearing any sound. The decision to attach the recorder was made by respondent's division manager. All conversation of phone calls placed or received were recorded for a period of six days until April 21, 1976, when the recorder was disconnected. The taped conversations were immediately erased with a bulk eraser, and no one ever listened to the tapes.

Appellant discovered the fact that respondent had recorded conversations on the party line and filed a complaint for invasion of privacy in 1976. In his complaint, appellant sought general damages in the amount of $5,000 and punitive damages of $10,000. The prayer was later amended, however, to seek relief in the amount of $500,000 punitive damages. Trial by jury began on May 29, 1979. During the trial, the District Court refused to admit the testimony of appellant's witnesses relating to the issue of punitive damages. At the closing of appellant's case-in-chief, the District Court directed a verdict for respondent. Appellant now contests the granting

of the directed verdict and the refusal to admit testimony relating to punitive damages on this appeal.

The law with respect to directed verdicts is well settled in the state:

> "Upon a motion for a directed verdict by a party, the evidence introduced by his opponent will be considered in the light most favorable to opponent. Thereupon, the conclusion sought by the moving party must follow as a matter of law. Parrish v. Witt (1976), Mont., 555 P.2d 741, 33 St.Rep. 999; Dieruf v. Gollaher (1971), 156 Mont. 440, 481 P.2d 322; Pickett v. Kyger (1968), 151 Mont. 87, 439 P.2d 57.

> "Generally, directed verdicts are not favored by the courts. LaVelle v. Kenneally (1974), 165 Mont. 418, 529 P.2d 788. A cause should never be withdrawn from the jury unless the conclusions from the facts advanced by the moving party follows necessarily, as a matter of law, that recovery can, as here, or cannot be had under any view which can be reasonably drawn from the facts which the evidence tends to establish. In Re Estate of Hall v. Milkovich (1972), 158 Mont. 438, 492 P.2d 1388; Shields v. Murray (1971), 156 Mont. 493, 481 P.2d 680; Johnson v. Chicago, M & St. P. Ry. Co. (1924), 71 Mont. 390, 230 P.2d 52. A corollary rule is that where reasonable men might differ as to the conclusions of fact to be drawn from the evidence, viewed in the light most favorable to the party against whom the motion is made, a jury question is presented, and resolution by way of directed verdict is improper. Parini v. Lanch (1966), 148 Mont. 188, 418 P.2d 861." Lawlor v. Flathead County (1978), 177 Mont. 508, 582 P.2d 751, 754, 35 St.Rep. 884.

The record in this case indicates that appellant's cause of action was tried on the basis of federal statutes regulating electronic surveillance and the interception of wire or oral communications, codified at sections 2510 through 2520 of Title 18 of the United States Code and commonly known as Title III of the Omnibus Crime Control and Safe Streets Act. Under these statutes, it is illegal as a general rule for any person to intercept any wire or oral communication. For violations

thereof, a civil cause of action is authorized on behalf of any person whose conversation has been illegally intercepted. Section 2511 makes it a crime, with certain specified exceptions, for any person to willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication. Exempted from this crime, however, are certain activities of telephone companies or common communication carriers:

> "It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communications common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of employment while engaged in any activity which is necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: Provided, That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks." 18 U.S.C. 2511(2)(a)(i).

For violations of section 2511, a civil action providing for the recovery of actual damages, punitive damages, costs and reasonable attorneys fees is authorized. Section 2520 provides:

> "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action . . . and (2) be entitled to recover from any such person--
>
> "(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
>
> "(b) punitive damages; and
>
> "(c) a reasonable attorney's fee and other litigation costs reasonably incurred."

At trial respondent defended against appellant's cause of action by contending, among other things, that it conducted

monitoring or recording which fell within the statutory exception to section 2511. Respondent argued, in moving for a directed verdict, that the evidence showed only that the telephone company, by recording the conversations, was taking necessary steps to render service to its subscribers and protect its property. Appellant contended, however, that respondent's recording did not fall within section 2511(2)(a)(i), because the exception was strictly construed and because the evidence demonstrated that the recording was excessive. The trial court, however, applied the exception and concluded, after reviewing appellant's case, that the type of recording which was conducted by respondent was a necessary incident to the rendition of services and the protection of its property. In effect, the trial court ruled that the recording could not have been conducted less extensively and that the telephone company could not have employed other reasonable measures to deal with the abusive practices.

The question confronting us on this appeal, then, is whether, viewing the evidence in a light most favorable to appellant, reasonable men might have differed with regard to the factual conclusions reached by the trial court. Was respondent's recording "reasonably necessary" to protect its property? All of this assumes, of course, that respondent could avail itself of the benefits or protection of the statutory exception. Was section 2511(2)(a)(i) intended to operate as a defense in proceedings such as this one and allow the kind of recording that occurred under the circumstances of this case? To provide a background from which we can view the evidence and facts of this case and thereby come to grips with these questions, we turn now to a brief consideration of

the legislative history of section 2511(2)(a)(i) and the courts' treatment of cases under the statutory exception.

A legislative history of section 2511(2)(a)(i) indicates that the "protection of property" exception was passed by Congress in 1968 in recognition of the already existing right of a telephone company to conduct investigations into wire fraud by monitoring or interception. The Senate Report to Title III states that section 2511(2)(a)(i) was intended to reflect "existing law," as exemplified by the case of United States v. Beckley (D. Ga. 1965), 259 F.Supp. 567. See S. Rep. No. 1097, 90th Cong., 2d Sess. 93 (1968), U.S. Code Cong. & Admin. News 1968 at 2112. In Beckley, two defendants used the services of a corrupt telephone employee to make long distance calls without charge so that regular bookkeeping procedures of the telephone company were bypassed. The telephone company monitored defendants' calls and discovered the scheme to defraud. The court held that the telephone company could monitor these conversations to protect its property without violating Fourth Amendment rights.

Subsequent to the passage of Title III, in accordance with this expression of Congressional intent, the applicability of section 2511(2)(a)(i) has generally been limited by most courts to wirefraud cases. Most of these have involved the fraudulent circumvention of telephone company billing procedures through the use of such devices as "blue boxes." See, e.g., United States v. Goldstein (9th Cir. 1976), 532 F.2d 1305, 1311; United States v. Freeman (7th Cir. 1975), 524 F.2d 337, 340, cert. den. 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); United States v. Glanzer (9th Cir. 1975), 521 F.2d 11, 12; United States v. Clegg (5th Cir. 1975), 509 F.2d 605, 613. "Blue boxes" emit multi-frequency tones used to activate

long distance lines. The caller uses the device by calling a toll free number and then generating the required tones to place the long distance call. As far as the billing system is concerned, the call is coming from the toll free number. Under these circumstances, telephone companies have been allowed to intercept and conduct recording.

Where other contexts have been discussed, such as the right of a telephone company to use electronic surveillance devices to investigate the making of obscene telephone calls, there has been little authority to suggest a broadening or an expansion of the statutory exception. One court has indicated, in relation to other federal statutes, a refusal to give telephone companies protection in these circumstances. Hodge v. Mountain States Tel. & Tel. Co. (9th Cir. 1977), 555 F.2d 254. In that case, Judge Merril, agreeing with Judge Renfrew, stated in a concurring and dissenting opinion:

> "When §605 was amended in 1968, Congress preserved (in 18 U.S.C. §2511(2)(a)(i)) the judicially created exception for telephone company investigations of fraud against its property. United States v. Clegg, 509 F.2d 605, 613 (5th Cir. 1975). Congress did not further encourage telephone companies to conduct self-authorized criminal investigations. To expand this limited exception to §605 to include investigations of misuse of company facilities by obscene telephone calls would invite including investigations of misuse by extortion, threat or other crimes directed against a telephone subscriber. The statutory exception should not, in my view, be broadened to include areas other than those in which the company is acting in self-defense . . ." Hodge, 555 F.2d at 269.

In the same case, however, the opposite view was also expressed. Judge Hufstedler, speaking for the minority and believing that telephone companies should have the right to protect their customers against obscene telephone calls, stated:

". . . While making obscene telephone calls
may be a crime, it also threatens the quality
of the telephone company's delivery of ser-
vice (i.e., a victim may, as a result of re-
ceiving such calls, refuse to pick up his
telephone or may discontinue his service al-
together). Thus, in contrast to those
situations where the use of the telephone
merely supplies the jurisdictional component
for the application of a federal criminal
statute, a telephone company has an interest
to protect when a telephone is used to make
obscene telephone calls . . ." Hodge,
555 F.2d at 265, n. 5.

The extent to which courts have allowed telephone companies
in wirefraud cases to monitor or record conversations of their
subscribers has varied. See United States v. Cornfeld (9th
Cir. 1977), 563 F.2d 967; United States v. Clegg, supra; United
States v. Freeman, supra; Bubis v. United States (9th Cir.
1967), 384 F.2d 643. The general rule for monitoring or inter-
cepting has been that the authority to monitor or intercept
is limited and that a telephone company may only record or
monitor to the extent "reasonably necessary" to protect its
property from fraud. Reasonable methods include the use of a
frequency recording device, such as a pen register, and the
limited use of a tape recorder to identify the offending par-
ties. United States v. Cornfeld, 563 F.2d at 970.

A pen register is a device which records only the numbers
dialed from a particular telephone. It does not disclose the
contents of any conversation, nor does it indicate whether
any calls were completed. A pen register is permissible be-
cause it is not capable of "interception" or "aural acquisition"
within the meaning of Title III. See 18 U.S.C. 2510(4);
United States v. New York Tel. Co. (1977), 434 U.S. 159, 98
S.Ct. 364, 54 L.Ed.2d 376; Michigan Bell Telephone Co. v.
United States (6th Cir. 1977), 565 F.2d 385, 388.

In regard to tape recorders, courts have approved of in-

stances of recording under the exception where only the beginning salutations were recorded to identify the parties, United States v. Clegg, supra, and where the first two minutes of conversations were recorded. United States v. Cornfeld, supra; United States v. Freeman, supra. Where, however, a telephone monitored and recorded the entire contents of all calls placed and received by a subscriber for a period of three months, it has been held that such monitoring and recording was unreasonable and unnecessary under the "protection of property" exception, violating the subscriber's right of privacy. Bubis v. United States, supra.

It is important to keep in mind here that several of the above holdings and statements have been made in the context of criminal prosecutions for wire fraud, where monitoring or recording was conducted pursuant to court order. In this regard, section 18 U.S.C. 2518(5) imposes a "minimization requirement" for such monitoring or recording, which may or may not be directly applicable to purely civil acts such as the instant case.

This case, of course, does not involve any element of wire fraud. Rather, it concerns the alleged misuse of telephone company facilities by means of harassing, annoying and obscene telephone calls. Assuming arguendo that the telephone company could avail itself of the protection of the statutory exception, we find that the trial court erred in directing a verdict for respondent.

Respondent here conducted recording on the party line for a period of six days. During this time, all phone calls placed and received were intercepted and recorded. Considering the nature and extent of this recording, and viewing it against prior cases in which courts have set forth the limits of per-

missible recording in analogous situations, we find that reasonable men could have drawn different conclusions as to whether the recording was necessary to the protection of property and the rendition of services. While some may have found the recording reasonably necessary, others may have found it intrusive. Different conclusions could have been gathered from the evidence, and the factual conclusion advanced by respondent and reached by the trial court did not follow as a matter of law. Therefore, the District Court erred in directing the verdict for respondent, and we find it necessary to remand this case for a new trial.

On remand we leave several matters for the consideration of the parties and the District Court. These matters include the questions of whether respondent may avail itself of the protection of the statutory exception, and whether, for that matter, appellant may bring a section 2520 action in a state court. In an annotation on the civil action under section 2520, it is stated:

> ". . . Relatively few cases have been reported in which the statute is construed or applied, and many questions about it are yet unanswered. For example, while it has been held that jurisdiction over a §2520 claim may be had in the federal courts under 28 U.S.C. 1343(4) (§4 infra), no federal case has been found in which it has been determined whether a §2520 action may be maintained in state courts (see, however, SR No. 1097, 90th Cong 2d Sess (1968) 1968 USCCAN p 2112, at 2196, wherein it is stated that the scope of the [§2520] remedy is intended to be comprehensive and exclusive, but there is no intent to preempt parallel State law') . . ." Annot. 25 A.L.R.Fed. 759, 761 (1975).

In this connection, we note that appellant may have an action at common law for the invasion of his privacy. See Annot., 11 A.L.R.3d 1296 (1967); Carr, The Law of Electronic Surveillance, §8.04(3) at 496. Several jurisdictions have extended

the common law tort to the field of telecommunications. Hamberger v. Eastman (1964), 106 N.H. 107, 206 A.2d 239; LaCrone v. Ohio Bell Tel. Co. (1961), 114 Ohio App. 299, 182 N.E.2d 15; Rhodes v. Graham (1931), 238 Ky. 225, 37 S.W.2d 46; Billings v. Atkinson (Tex. 1973), 489 S.W.2d 858. While some courts have indicated that a cause of this type would be denied to party line subscribers such as appellant, LaCrone, 182 N.E.2d at 16, it has been stated in a related context under federal statutes that although a party line user's privacy is obviously vulnerable, it does not necessarily follow that telephone conversations are completely unprotected. Lee v. State of Florida (1967), 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166. The elements of the cause of action are a ". . . wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." LaCrone, 182 N.E.2d at 17; Housch v. Peth (1956), 165 Ohio St. 35, 133 N.E.2d 340, 341.

Finally, in response to appellant's second issue, we note that punitive damages under 18 U.S.C. 2520 are recoverable only where malice is shown. Halperin v. Kissinger (D. D.C. 1977), 434 F.Supp. 1193, 1195; Campiti v. Walonis (D. Mass. 1979), 467 F.Supp. 464, 466; Jacobson v. Rose (9th Cir. 1978), 592 F.2d 515, 520. The transcript in this case indicates that respondent's recording was conducted out of a good faith effort to solve the abuses of the party line after many complaints had been received. Recordings were made only after letters of notice had been sent regarding these problems and the possibility of attaching a tape recorder to the party line. No evidence of malice was present. Consequently, we

find that the trial court properly refused evidence relating to punitive damages under these circumstances. If appellant seeks to recover punitive damages on remand under a §2520 theory, evidence of malice need be shown.

Remanded to the District Court for further proceedings consistent with this opinion.


_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice John C. Sheehy concurring in part and dissenting in part:

I concur with the foregoing opinion except I dissent to that portion determining that punitive damages are not recoverable here.

I believe that is a matter of fact to be decided on retrial and that the determination by this Court on an incomplete record and before retrial, is premature.

Under the federal cases of Halperin v. Kissinger (D.D.C. 1977), 434 F.Supp. 1193, 1195; and Campiti v. Walonis (D. Mass. 1979), 467 F.Supp. 464, 466, it need only be shown to establish malice under 18 U.S.C. 2520, that the defendant acted "wantonly, reckless, or maliciously." This includes implied malice as well as express malice. We could leave it to the jury to determine whether or not there was express or implied malice in this case, if the plaintiff otherwise prevails.

-------------------------------