No. 94-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

BROOKS B. BARNES, by and through his
Guardian Ad Litem, DOUGLAS A. BARNES,
and JUDY K. BARNES,

      Plaintiffs and Appellants,

  v.

UNITED INDUSTRY, INC.,

      Defendant and Respondent.

FILED

JAN 10 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Robert L. Stephens, Jr., R. L. Stephens, Ltd.,
            and Terry L. Seiffert, Attorney at Law,
            Billings, Montana

        For Respondent:

            Earl J. Hanson, Hanson, Roybal, Lee & Todd,
            Billings, Montana

Submitted on Briefs:  November 16, 1995

Decided:  January 10, 1996

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from a judgment based upon a jury verdict in the Thirteenth Judicial District Court, Yellowstone County, and the court's rulings on admission of evidence, the granting of a directed verdict in favor of United Industry, Inc., on punitive damages, and the denial of Brooks B. Barnes' request for post-trial relief. We affirm.

We restate the issues as follows:

1. Did the District Court err in not granting a new trial for alleged improper statements in final argument where no objection was made?

2. Did the District Court err in granting United's motion for a directed verdict on the issue of punitive damages?

3. Did the District Court err in not granting a new trial based on the refusal to admit a photograph exhibit taken nine days after the accident occurred and a letter from Barnes' attorney to United written four days after the accident?

4. Did the District Court err in not granting a new trial based on the jury's finding that Barnes suffered no future loss of earning capacity?

5. Did the District Court err in not granting a new trial based on the inadvertent failure to instruct on the standard of care of a bicyclist?

6. Did the District Court err in denying Barnes' motion for additur?

FACTS

On September 6, 1990, Barnes, then age fifteen, was riding his bicycle along the sidewalk next to the Transwestern I building in Billings. The Transwestern I building is an office building owned by United and was being refurbished at the time of the accident. Barnes rode his bicycle into a plastic pipe that had been placed on and across the sidewalk by United's employee to allow for the watering of the grass. Barnes hit the pipe and fell from his bike breaking both of his wrists. There was no barricade in place at the time of the accident.

Barnes has incurred several surgeries to his wrists, including plastic surgery to correct a resulting deformity in both arms. Despite his injuries, Barnes graduated with honors from high school and received a scholarship to Marquette University where he is pursuing a degree in journalism. He currently attends the University's communication school and, although he types his own papers, he is required to rest after forty minutes of typing due to pain in his wrists. Barnes also testified that the injuries have limited his routine everyday activities as well as his recreational activities.

Barnes asked for both compensatory and punitive damages. The case was tried to a twelve-person jury. At the conclusion of Barnes' case in chief, the District Court granted a directed verdict on the issue of punitive damages in favor of United. The remainder of the case was submitted to the jury and the jury found Barnes thirty percent negligent and United seventy percent

3

negligent. The jury awarded Barnes $89,641 which the court reduced to $62.763.

At trial, Barnes offered into evidence two pictures. One was of the accident scene the day after the accident and the other was of the accident scene nine days later. The court admitted into evidence the first picture but refused the second.

During closing arguments, the attorney for United admitted liability but also referenced the action of third parties that may have contributed to the accident--the subcontractors who apparently removed the sidewalk barriers without notifying United.

Before the jury was dismissed, Barnes offered an instruction on the standard of care that a bicyclist must follow. The District Court inadvertently did not give the instruction to the jury.

Following trial, Barnes filed a motion for additur to increase the jury verdict from anywhere between $45,000 to $75,000. The District Court did not grant the motion for additur.

Barnes filed a motion for new trial citing the above grounds as well as the jury's refusal to award any damages for future loss of earning capacity. The District Court denied Barnes' requests for a new trial.

From the court's denial of post-trial relief, grant of a directed verdict, refusal of evidence, and the jury's verdict, Barnes appeals.

## ISSUE 1

Did the District Court err when it denied Barnes a new trial for alleged improper statements in final argument where no objection was made?

Barnes contends that in its final argument United admitted liability but then argued that its employees were unaware that the barricade had been removed. United then made an alleged improper inference that there was third-party liability of some sort on the part of the contractor for failing to advise United of the removal of barricades from the sidewalk. Barnes asserts that a new trial is warranted where improper statements are made in closing arguments. See Kuhnke v. Fisher (1984), 210 Mont. 114, 683 P.2d 916. In the District Court's memorandum, Barnes' request for a new trial was denied because Barnes

> did not object to any portion of the final argument submitted by [United's] counsel. Therefore, assuming that some portion of [United's] counsel's argument was improper, [Barnes] waived any objections he may have had to the content of defense counsel's argument.

In Reno v. Erickstein (1984), 209 Mont. 36, 679 P.2d 1204, we held that failure to make a timely objection to alleged improper statements of counsel in closing argument constitutes a waiver. A party looses his right to appeal an alleged err where an objection to that err was waived. Whiting v. State (1991), 248 Mont 207, 221, 810 P.2d 1177, 1187. The record sets forth no objection to the content of United's final argument nor any request for corrective action. We therefore conclude that the District Court did not err when it denied Barnes a new trial for alleged improper statements in final argument where there was no objection to the statements.

ISSUE 2

Did the District Court err in granting United's motion for a directed verdict on the issue of punitive damages?

5

At the conclusion of Barnes' case in chief, the District Court granted United's motion for directed verdict on the issue of punitive damages. The District Court, however, failed to set forth any findings as to why it did not allow punitive damages. Nevertheless, this Court will affirm a district court's grant of a directed verdict if the court's conclusion is correct regardless of the reasons given. Riley v. American Honda Motor Co. (1993), 259 Mont. 128, 131, 856 P.2d 196, 198 (citing Laurie v. M. & L. Realty Corp. (1972), 159 Mont. 404, 408, 498 P.2d 1192, 1194). We review a directed verdict in light of the evidence most favorable to the party against whom the verdict was directed. LaVelle v. Kenneally (1974), 165 Mont. 418, 529 P.2d 788.

Barnes claims punitive damages should have been assessed upon United because of United's malicious acts. Punitive damages may be awarded when the defendant is found, by clear and convincing evidence, to be guilty of actual malice. Section 27-1-221(1),(5), MCA.

> A defendant is guilty of actual malice if he has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and . . . deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Section 27-1-221(2), MCA. Barnes alleges United placed the pipe over the sidewalk and left it there for a period of two weeks in wanton and willful indifference to the hazard the pipe created for pedestrians and bicyclists.

United contends there was no evidence presented that showed the employee who laid the pipe across the sidewalk acted in

6

conscious or blatant disregard of the high probability of injury to Barnes, or that the employee deliberately proceeded to act in indifference to the high probability of injury to Barnes. The employee testified that the barricade was in place when he initially laid the pipe on the sidewalk and every time he moved the pipe thereafter. Barnes produced no evidence to the contrary.

In Niles v. Big Sky Eyewear (1989), 236 Mont. 455, 460, 771 P.2d 114, 117, *overruled on other grounds by* Sacco v. High Country Independent Press (1995), 896 P.2d 411, 423, 52 St. Rep. 407, 416, we held punitive damages were not appropriate where the plaintiff had not presented a prima facie case including clear and convincing evidence of all elements required under § 27-1-221, MCA. In order to render a defendant liable for exemplary damages, plaintiff must allege and prove something more than mere negligence. Gagnier v. Curran Const. Co. (1968), 151 Mont. 468, 480, 443 P.2d 894, 901.

In the present case, Barnes did not produce any evidence to contradict the testimony of United's employee. Accordingly, Barnes is not entitled to an award of punitive damages. Therefore, we hold that the District Court did not err in granting United's motion for a directed verdict on the issue of punitive damages.

ISSUE 3

Did the District Court err in not granting a new trial based on the refusal to admit a photograph exhibit taken nine days after the accident occurred and a letter from Barnes' attorney to United written four days after the accident?

At trial, Barnes moved to introduce two photos into evidence. The first photo was of the accident scene the day after the accident and the second photo was of the same scene nine days later. The District Court allowed the first photo into evidence but did not allow the second because it found the second photo was not relevant to the conditions at the time of the accident.

The District Court has broad discretion to determine the admissibility of evidence, and we will not disturb the court's ruling absent a manifest abuse of discretion. King v. Zimmerman (1994), 266 Mont. 54, 65, 878 P.2d 895, 902.

In Lindberg v. Leatham Brothers, Inc. (1985), 215 Mont. 11, 24, 693 P.2d 1234, 1243, we held that a district court's exclusion of evidence was proper where the evidence consisted of a photograph that "does not tend to prove, disprove, or support any material fact in the case . [and is] irrelevant and repetitive." The second photograph depicted an accident scene nine days after the accident. The District Court correctly concluded that the photograph was not relevant to the conditions existing at the time of the accident.

Barnes also attempted to introduce the photograph as evidence that United took no action to remove the pipe or replace the barricade after the accident thus contending that the photograph was relevant to the issue of punitive damages. In addition, Barnes offered into evidence a letter his attorney wrote to United four days after the accident. The letter generally advised United of the accident. Barnes argued that the letter was evidence of

8

further notice to United of the accident and that United acted maliciously in not removing the pipe or replacing the barricade after receiving such notice. The District Court reserved ruling on the picture and the letter's admissibility for purposes of punitive damages until after Barnes' case in chief.

In Issue 2, we affirmed the District Court's directed verdict on the issue of punitive damages. Once a determination is made that punitive damages are not allowed, evidence pertaining to them should be excluded. Ryan v. Ald, Inc. (1965), 146 Mont. 299, 303, 406 P.2d 373, 375. Therefore, the District Court properly refused the photograph exhibit and the letter for purposes of punitive damages as well.

The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. Baxter v. Archie Cochrane Motors, Inc. (Mont. 1995), 895 P.2d 631, 632, 52 St. Rep. 444, 444. We conclude that the District Court properly refused the photograph exhibit taken nine days after the accident occurred and the letter Barnes' attorney sent to United. We therefore conclude that the court did not abuse its discretion in not granting a new trial.

ISSUE 4

Did the District Court err in not granting a new trial based on the jury's finding that Barnes suffered no future loss of earning capacity?

Barnes presented several expert witnesses who testified to the effect the injury had on Barnes' future earnings. United offered no testimony on this issue, but rather relied upon its cross-examination of Barnes' witnesses. The jury, upon instruction that it could disregard any testimony from any expert, found Barnes' injury would not result in future loss of earnings. Barnes claims on appeal that there was a lack of substantial evidence to support the jury's findings and that the District Court erred in not granting a new trial.

We review a jury's verdict to determine if there is substantial credible evidence in the record to support it. Barthule v. Karman (1994), 268 Mont. 477, 485, 886 P.2d 971, 976. Substantial evidence is "more than a scintilla, but . less than a preponderance, of evidence." State v. Shodair (Mont. 1995), 902 P.2d 21, 26, 52 St. Rep. 879, 882. We have held that it is not the function of this Court to agree or disagree with a jury's verdict. Schulke v. Gemar (1994), 264 Mont. 184, 188, 870 P.2d 1378, 1380. If conflicting evidence exists, we do not retry a case because the jury chose to believe one party over another. Simchuk v. Angel Island Community Assn. (1992), 253 Mont. 221, 229, 833 P.2d 158, 163.

Barnes introduced testimony of expert witnesses as evidence of his future earning capacity. The credibility and weight to be given these expert witnesses is within the province of the jury and not of this Court. See Hagen v. Dow Chemical Co. (1993), 261 Mont. 487, 494, 863 P.2d 413, 418.

Barnes' orthopedic surgeon, Dr. Hansen, testified on behalf of Barnes that Barnes' injury could inhibit full growth potential of bones in his wrist and he would therefore be susceptible to further injury. Dr. Hansen further testified that Barnes' had an estimated five to fifteen percent permanent impairment of the function in his wrists. Nevertheless, Dr. Hansen testified during cross-examination that if surgery was successful Barnes would be physically capable of performing the duties necessary for a career in journalism.

Barnes also called Dr. Adair, an economic analyst, as an expert witness. Under direct examination, Dr. Adair testified that as a result of this injury Barnes' work life will be decreased by 12.9 years, he will incur a 15 percent reduction of productivity, and he will have to endure a substantial increase in insurance premiums. During cross-examination, Dr. Adair conceded that Barnes would not be affected by increased insurance premiums if Barnes is provided health insurance through his work place. Additionally, Dr. Adair testified that if Barnes became a successful journalist and did not require any additional commitment of resources over and above what any other journalist would require Barnes would not suffer any loss of earning capacity.

Barnes argues that Brockie v. Omo Construction (1994), 268 Mont. 519, 887 P.2d 167, is controlling in this case. Brockie was killed in an automobile accident involving a sign owned by Omo Construction. His estate brought a survivorship action against Omo Construction. The jury awarded zero dollars in survivorship damages despite the fact that the evidence and stipulations

11

established funeral and medical expenses and a loss of future earning capacity for the remainder of Brockie's life expectancy. This Court, citing Putman v. Pollei (1969), 153 Mont. 406, 457 P.2d 776, and Rudeck v. Wright (1985), 218 Mont. 41, 709 P.2d 621, reversed the jury verdict and remanded for a new trial on survivorship damages, finding that the evidence establishing survivorship damages was either stipulated to or offered without contradiction.

Brockie, Putman, and Rudeck are clearly distinguishable from the present case. All of those cases involved survivorship claims brought by estates where the evidence as to survivorship damages was uncontested. In this case, although Barnes suffered injuries to his wrist, he was able to successfully complete high school and attend college. There was conflicting testimony as to the effect of this injury on his future earnings and we will not retry the case because the jury chose to believe one party over another. Simchuk, 833 P.2d at 163.

In reference to the experts' testimony, the jury was instructed that it was not bound by the opinion offered and that it should determine what weight to give the testimony. We conclude that there was substantial credible evidence in the record to support the jury's finding that Barnes suffered no future loss of earning capacity.

A District Court's grant or denial of a motion for a new trial will not be disturbed absent a showing of a manifest abuse of discretion. Baxter, 895 P.2d at 632. In the instant case, the

12

District Court showed no abuse of discretion because there was sufficient evidence to support the jury's verdict. We therefore conclude that the court did not err in denying Barnes' request for a new trial.

ISSUE 5

Did the District Court err in not granting a new trial based on the inadvertent failure to instruct on the standard of care of a bicyclist?

At trial, Barnes offered Plaintiff's Instruction No. 15 which was the standard of care for a bicyclist. United did not object to the instruction and it was accepted by the District Court. In the recap of the instructions, however, Plaintiff's Instruction No. 15 was not referenced. One of Barnes' attorneys noticed the omission but did not make an objection or bring the omission to the court's attention.

Barnes moved the District Court for a new trial based on this omission. The District Court denied Barnes' motion because Barnes did not object nor did he request any curative actions, and therefore, Barnes' objection was untimely. Further, the court held that even if the objection was timely, the lack of the instruction did not prejudice Barnes. The court pointed out that the standard had been referred to in other instructions and that this instruction was merely a more detailed version of the standard of care for a bicyclist. We will not disturb a district court's denial of a motion for new trial absent a showing of manifest abuse of discretion. Baxter, 895 P.2d at 632.

13

The District Court's omission of the instruction was an inadvertent act of the court and not a refusal of the instruction. This omission was an irregularity in the proceedings of the court. In Franck v. Hudson (1962), 140 Mont. 480, 373 P.2d 951, we stated:

> A long line of cases in this state has established the rule that when a party fails to make a timely objection to an irregularity in the proceedings of the court . . . then the irregularity is waived.

Franck, 373 P.2d at 953-54 (citing Herren v. Hawks (1961), 139 Mont. 440, 365 P.2d 641). Barnes' counsel disclosed, in an affidavit to the court, that he became aware of the omission during the court's reading of the instructions. According to the record, Barnes did not bring the omission to the court's attention. Therefore, Barnes waived any objection to the court's omission of the jury instruction. It follows that the District Court did not abuse its discretion in denying a new trial.

We hold that the District Court did not err when it denied a new trial based on the inadvertent failure to instruct on the standard of care of a bicyclist.

ISSUE 6

Did the District Court err in denying Barnes' motion for additur?

Barnes moved the District Court for an order granting additur in the amount of $45,000 to $75,000. The District Court denied Barnes' motion and stated:

> [Barnes'] Motion for Additur has no merit. In Bohrer v. Clark (1978), 180 Mont. 233, 590 P.2d 117, the Court expressly held that the trial Court had no authority to add to a jury's verdict. That case has not been overruled and represents the law of this State, as of

14

this date. Therefore, this Court, even if it were sympathetic to [Barnes] argument, could not grant [Barnes'] Motion for Additur.

Barnes argues that this Court should overturn the rule stated in Bohrer because it is inconsistent for a court to be allowed to decrease a jury verdict but not to increase the same.

This Court, in Bohrer, adhered to the reasoning in State Highway Commission v. Schmidt (1964), 143 Mont. 505, 391 P.2d 692, where we discussed the issue of a district court's right to increase a jury verdict. Bohrer, 590 P.2d at 121. A grossly inadequate verdict should not be permitted to stand. In that instance, however, both parties are entitled to a new trial whereby a jury can properly access liability and damages. To have the court award increased damages would effectively deny the right to a trial by jury. In decreasing a jury verdict, the court awards an amount within the amount awarded by the jury. Accordingly, a court's decrease of a verdict is founded in law while a jury's verdict is an award based on the facts. Schmidt, 391 P.2d at 695 (citing Dimick v. Schiedt (1935), 293 U.S. 474, 486, 55 S. Ct. 296, 301, 79 L. Ed. 603).

Barnes contends that since Article II, Section 26, of the Montana Constitution permits parties to waive their rights to a jury trial, the rationale of Schmidt is no longer valid. Barnes' contention is unsound because a party's right to a jury trial is secured regardless of whether the party chooses to waive that right. See Mont. Const. art. II, § 26. The analysis in Schmidt remains persuasive, and therefore, we affirm the rule stated in

15

<u>Bohrer</u>.  We conclude that the District Court correctly interpreted that rule of law, and therefore, the court did not err in denying Barnes' motion for additur.

_____
                                                Justice

We concur:

_____
                    Chief Justice

_____

_____

_____
                    Justices

January 10, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Terry L. Seiffert
Attorney At Law
Box 31181
Billings MT 59107-1181

Robert L. Stephens, Jr.
Attorney At Law
Box 1438
Billings MT 59103-1438

Earl J. Hanson
Hanson, Roybal, Lee & Todd, P.C.
Box 7207
Billings MT 59103-7207

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy